[No. G038445. Fourth Dist., Div. Three. Sept. 2, 2008.]

ROBERT M. GUNN, Plaintiff and Appellant, v.
MARINERS CHURCH, INC., Defendant and Respondent.

COUNSEL

James Toledano for Plaintiff and Appellant.

Daley & Heft, Robert W. Brockman and Golnar J. Fozi for Defendant and Respondent.

## OPINION

**O'LEARY, J.**—Robert M. Gunn appeals from a judgment in favor of Mariners Church, Inc., in his action for defamation, invasion of privacy, and intentional infliction of emotional distress after the trial court granted Mariners Church's motion for summary judgment. Mariners Church terminated Gunn from his position as worship director upon discovering he was homosexual. Afterwards, the senior pastor announced to the congregation the church terminated Gunn from his pastoral position because he had admitted to acts the church considered to be a sin. Gunn concedes Mariners Church's actions were religiously motivated and in furtherance of its established church policy regarding termination of ministerial leaders in the church. Nonetheless, he contends the ministerial exception does not apply to preclude court intervention in this dispute. We disagree and affirm the judgment.

### FACTS/PROCEDURE

In our prior opinion, discussed in more detail anon, we reversed a judgment in favor of Mariners Church, its senior pastor, its executive pastor, and members of its board of elders (hereafter sometimes called the individual defendants) after their demurrer was sustained without leave to amend. (*Gunn v. Mariners Church, Inc.* (May 27, 2005, G032304) [nonpub. opn.] (*Gunn I*).)

Gunn's complaint alleged he was employed by Mariners Church as its worship director. Gunn is gay, but had never revealed his sexual orientation to any of the individual defendants. However, when the individual defendants learned about Gunn's sexual orientation in the fall of 2001, they terminated his employment.

Gunn alleged that the day after his termination, the individual defendants made statements to church staff and the congregation to the effect that Gunn had been fired because he engaged in "sinful" conduct, had suffered "a breakdown in character" and was "a broken man." Gunn also alleged defendants repeatedly told church staff and the congregation he "had been asked 40 or 50 times if he were gay and had lied and said that he was not." Gunn's complaint contained a cause of action for intentional infliction of emotional distress, defamation, and asserted defendants invaded his privacy by disclosing details of his sexual orientation to the staff and congregation.

The trial court sustained defendants' demurrer on the ground Gunn's causes of action were barred by the ministerial exception. On appeal, a majority of this court concluded the applicability of the ministerial exception to all the alleged acts was not clear on the face of the complaint. While the truth or falsity of most of the statements allegedly made could not be inquired into because they involved expressions of religious opinion, allegations defendants repeatedly told the staff and congregation Gunn had lied to them about his sexual orientation were free of religious opinion. And it was not clear the act of disclosing to church staff and the congregation the facts concerning Gunn's sexual orientation was related to the termination process or served an ecclesiastical purpose. Accordingly, we remanded for further proceedings.

*Proceedings on Remand: Summary Judgment Motion*

On remand, Gunn dismissed the individual defendants with prejudice, following a stipulation that all of their acts were within the course and scope of their employment or agency relationship with Mariners Church. Mariners Church filed a motion for summary judgment on the ground Gunn's complaint was barred by the ministerial exception. In his opposition, Gunn conceded most of Mariners Church's facts, and he did not assert any contrary facts or provide any additional evidence. He did in a few instances dispute Mariners Church's interpretation or characterization of the evidence it submitted.

Mariners Church set forth the following undisputed facts supported by deposition testimony and declarations. Mariners Church is a conservative

evangelical Christian church. Gunn was licensed as a minister by Mariners Church in 1992, was employed as its worship minister for six years, and then became its worship director in 2000, and as such was the leader of the church choir. As worship director, Gunn appeared before the congregation at church services managing all musical aspects of the service, and "he was the second most influential person in [Mariners Church]." Gunn was aware Mariners Church considers homosexuality inappropriate and in violation of church doctrine.

Mariners Church's senior pastor, Kenton Beshore, had a policy of "openness and honesty about activities that could potentially disqualify one from leadership." If a church leader was "guilty of misconduct," it was church policy to confront that person and to tell anyone in the church who was immediately affected by the particular leader's ministry of the reason for his or her disqualification from church leadership. Sometime before his own termination, Gunn himself had participated as a church leader in terminating another staff member after discovering he was homosexual, following which Gunn made an announcement to the entire church choir (about 100 people) the staff member had been removed from his position because he "had admitted to some moral failure."

On Friday, October 12, 2001, a church employee in whom Gunn had confided details of his sexual orientation, informed Mariners Church's executive pastor, Jim Russell. When later asked by Beshore and a church elder if he was gay, Gunn responded, "yes."

On Tuesday, October 16, 2001, Beshore and Russell advised Gunn he was going to be terminated from his leadership position and that an announcement would be made to church staff, the choir, and the congregation. Beshore had previously made similar announcements to the entire congregation when other church leaders were removed from leadership positions. For example, the man who preceded Gunn as worship pastor was terminated when his marriage fell apart. Beshore explained that because Mariners Church placed "a very high value on marriage," it was not appropriate to have a pastor whose own marriage was "unraveling" on the "front lines." Beshore announced the reasons for the pastor's termination to the congregation because doing so was necessary for "the integrity of the ministry."

Following his discussion with Beshore, Gunn prepared a written message which he agreed could be read by church elders to the "music community" (i.e., the choir). In that statement, Gunn revealed he was gay and said there was now "a fundamental difference in theological perspective between [himself] and [Mariners Church]" making it "necessary to part ways."

At Mariners Church services on Sunday, October 21, 2001, Beshore spoke to the congregation about Gunn's termination. Prior to doing so, Beshore informed congregants that another person who had appeared before the entire congregation at services as a volunteer speaker had suffered "a moral failure," but he did not elaborate. Beshore told the congregation Gunn had been terminated as worship director because he had "admitted to moral and sexual actions which according to the Bible, are sin and disqualify him from leadership and ministry in our church." He told the congregants they did not need to know more details than that. Beshore told congregants it was important for the matter to be brought out in the open because the church congregants should "hold to the biblical standards of leadership, and when someone in leadership has disqualified themselves and there has been a breakdown in character, we need to be honest with each other and talk about that, and then pray for each other with it." Beshore then referred to a specific passage in the Bible stating, "if someone is caught in a sin you who are spiritual should restore him . . . gently, but watch yourself so that you are not also tempted."

In his deposition, Beshore testified his statements to the congregation were necessary because "[Gunn's] ministry was in front of the whole church." He also considered it necessary because congregants should not learn about problems with church leaders "through the rumor mill."

As for Gunn's allegation the individual defendants had repeatedly stated to church staff and the congregation that "Gunn had been asked 40 or 50 times if he were [sic] gay and had lied and said that he was not," the only evidence Gunn had was his own deposition testimony as follows: that Gunn's former secretary's husband, *who was not a member of Mariners Church*, told Gunn he had had lunch with a church elder (a former individual defendant) who told him Gunn "had been asked over and over again if [he] was gay by the church and [he] had lied about it consistently over and over again." Gunn testified he had "heard from other people that comments were made in the context of my being a liar, the church calling me a liar or a deceiver," but he could not specifically identify anyone who had made such statements or "who was credited with [them]."

*The Ruling*

The trial court granted Mariners Church's summary judgment motion concluding there was no material issue of fact as to the applicability of the ministerial exception. Specifically citing the reasoning in this court's prior opinion, the trial court concluded it was undisputed by Gunn that all of Mariners Church's acts "were in furtherance of the established church policy regarding termination of employment of a leader within the church." Gunn

had full knowledge of those procedures and in fact had utilized them himself when "terminating a subordinate leader in the church." There was no evidence supporting Gunn's allegation that Mariners Church leaders had repeatedly stated to church staff and congregants that Gunn had repeatedly lied to them about his sexual orientation.

## DISCUSSION

### 1. Summary Judgment Standard of Review

"Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment bears the initial burden of proving the 'cause of action has no merit' by showing that one or more elements of plaintiff's cause of action cannot be established or there is a complete defense. [Citations.] Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. [Citation.]" (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805 [85 Cal.Rptr.2d 459].)

"On appeal, we review the record de novo to determine whether the moving party met its burden of proof. [Citations.] But this de novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed. [Citations.]" (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 [113 Cal.Rptr.2d 90]; see also *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 [35 Cal.Rptr.3d 837].)

### 2. Record on Appeal

We comment at the outset on the appellate record. Critical to our review of any summary judgment is the moving party's separate statement of undisputed facts. Gunn elected to proceed by way of an appellant's appendix (Cal. Rules of Court, rule 8.124), in which he has included Mariners Church's points and authorities and its attorney's declaration to which were attached various deposition pages and other pieces of documentary evidence, but not Mariners Church's actual separate statement of undisputed facts. Gunn's failure to provide a complete record arguably precludes him from meeting his appellate burden. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865

[64 Cal.Rptr.2d 324]; see *Wyckoff v. Pajaro Valley etc. R. R. Co.* (1905) 146 Cal. 681 [81 P. 17] [on appeal from order granting new trial, order affirmed because appellant did not include the new trial motion in the record]; *Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 402 [134 Cal.Rptr.2d 689] [although summary judgment for plaintiff was reversed on appeal, appellate court would not direct entry of summary judgment for defendant based on his competing motion; because defendant did not provide a copy of his motion or the opposition papers, he failed to supply an adequate appellate record].)

Gunn has, however, included his own separate statement in the appellant's appendix, which appears to be in the form required by the court rules juxtaposing Mariners Church's assertions of undisputed fact with Gunn's responses thereto. (Cal. Rules of Court, rule 3.1350(d).) And Mariners Church does not suggest Gunn's separate statement inaccurately represents its statement of undisputed facts. Accordingly, we will proceed on the merits based on Gunn's separate statement and the evidence Mariners Church submitted.

3. *The Ministerial Exception*

Gunn contends the undisputed facts on summary judgment do not establish the applicability of the ministerial exception to preclude further judicial review of this dispute. We disagree.

■ The trial court's ruling and our review of it are governed by the legal principles laid out in the majority opinion in the earlier appeal. "Under the law of the case doctrine, when an appellate court ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ." ' [Citation.] Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.' [Citation.] As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact. [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246 [9 Cal.Rptr.3d 76, 83 P.3d 480].)

In our prior decision, we reversed the judgment entered in favor of Mariners Church after its demurrer was sustained without leave to amend on the ground it was barred by the ministerial exception. (*Gunn I, supra,* G032304.) Gunn's complaint alleged that the day after his termination, the individual defendants made the following statements to church staff, which were repeated to the congregation during church services and repeatedly made by the individual defendants thereafter: " '(a) that . . . Gunn had

admitted to moral and sexual actions that are a sin; (b) that . . . Gunn had disqualified himself from leadership through a breakdown in character; (c) that . . . Gunn had been caught in a sin; (d) that . . . Gunn was a broken man who needed to be restored; [and] (e) that . . . Gunn had been asked 40 or 50 times if he were [*sic*] gay and had lied and said that he was not.' " (*Gunn I, supra,* G032304.)

We agreed with Mariners Church that the majority of the statements allegedly made by the church leaders were not actionable "[u]nder unassailable First Amendment law," because they necessarily implicated the truth or falsity of religious doctrine. (*Gunn I, supra,* G032304.) We concluded, "Any determination concerning the truth or falsity of statements accusing Gunn of being 'caught in a sin,' having admitted to 'moral and sexual actions that are a sin,' being a 'broken man,' or having 'disqualified himself from leadership through a breakdown in character' would necessarily require a finding of what is and is not 'moral' and 'sinful' within the beliefs of Mariners Church. We cannot undertake such a mission." (*Ibid.*)

We concluded, however, there were two allegations in Gunn's complaint that might be resolved without reference to the religious doctrine of Mariners Church: (1) Gunn's allegation that church leaders told church staff, the congregation during church services, and repeated thereafter, " 'Gunn had been asked 40 or 50 times if he were gay and had lied and said that he was not' "; and (2) Gunn's allegation Mariners Church invaded his privacy by informing church staff and the congregation about his homosexuality after his termination. We concluded that neither allegation on its face implicated religious precepts and might be actionable. (*Gunn I, supra,* G032304.) We then went on to explain the circumstances under which the ministerial exception would nonetheless preclude further judicial review of those alleged acts as well because they concerned termination of the church's employment relationship with one of its ministers.

■ In *Gunn I,* the majority opinion explained as follows: "[T]he ministerial exception 'bars courts from reviewing employment decisions by religious organizations affecting employees who have the religious duties of ministers. [Citations.]' (*Catholic Charities of Sacramento, Inc. v. Superior Court* (2004) 32 Cal.4th 527, 543 [10 Cal.Rptr.3d 283, 85 P.3d 67] (*Catholic Charities*).) . . . [¶] . . . [¶] The ministerial exception can apply to otherwise actionable claims of defamation and invasion of privacy, when based on statements 'related to the hiring, firing, discipline or administration of clergy.' (*Higgins v. Maher* (1989) 210 Cal.App.3d 1168, 1175 [258 Cal.Rptr. 757] (*Higgins*).) The United States Supreme Court has not spoken on the ministerial exception and no court that has addressed the exception has articulated a bright-line test for determining when defamatory and privacy invading statements are 'related to' the termination of a minister. As stated in *Higgins,* the

difficulty comes in determining whether a particular dispute is ' "ecclesiastical" ' or simply a civil law controversy in which church officials happen to be involved. (*Id.* at p. 1170.) [¶] Certain principles, however, can be gleaned from the existing cases. For example, the ministerial exception is applied liberally and may cover defamatory statements that severely harm the plaintiff. ([*Id.*] at p. 1175.) Additionally, application of the ministerial exception may apply even though 'the alleged defamatory statements do not express any religious principles or beliefs.' (*Yaggie v. Indiana-Kentucky Synod Lutheran Church* (W.D. Kentucky 1994) 860 F.Supp. 1194, 1198 (*Yaggie*).)" (*Gunn I, supra,* G032304.)

We explored *Higgins* further in considering the circumstances in which the ministerial exception might apply. In *Higgins,* a very detailed complaint alleged a Catholic bishop made numerous statements that defamed, invaded the privacy of, and inflicted emotional distress upon the plaintiff priest. But the complaint also disclosed on its face " 'the acts so taken were *part and parcel* of the Bishop's administration of his ecclesiastical functions.' (*Higgins, supra,* 210 Cal.App.3d at pp. 1175–1176, italics added.)" (*Gunn I, supra,* G032304.) The alleged acts on their face were "part of the process of defrocking the plaintiff [priest]." (*Ibid.*) " 'If, as part of procedures resulting in the defrocking of a priest, the Bishop makes false accusations, we restrain the civil authorities from becoming involved. The accusations, false or not, pertain directly to the ecclesiastical functions of the church, and we deign not to become involved. When we *know* that torts such as those of which [the plaintiff] complains occurred as inseparable parts of a process of divestiture of priestly authority, we are most reluctant to sever them from the privileged aura of what might be called ecclesiastical exemption.' (*Higgins, supra,* 210 Cal.App.3d at p. 1176.)" (*Gunn I, supra,* G032304.)

In our prior opinion, however, the majority concluded that unlike *Higgins,* in which the complaint was clear on its face that all of the alleged acts occurred while carrying out the bishop's ecclesiastic functions, the same could not be said about Gunn's complaint. "[Gunn] alleged that *after* being terminated from his ministerial position because of his homosexuality, church officials not only publicly announced the fact of his homosexuality to the entire congregation, but wrongly stated Gunn had lied to them on 40 to 50 occasions denying his homosexuality. . . . But the complaint contains no facts from which we can say there was an ecclesiastical purpose for any statements being made to the entire congregation after Gunn's employment was terminated. We cannot say from the record before us the defendants' statements were 'part and parcel' of the defendants' ecclesiastical functions, or 'inseparable parts of a process of divestiture of priestly authority . . . .' (*Higgins, supra,* 210 Cal.App.3d at pp. 1175–1176.)" (*Gunn I, supra,* G032304.)

*i. The undisputed evidence establishes the statements made to the congregation after Gunn's termination were part of the termination process.*

■ We apply the above legal principles concerning the ministerial exception as articulated in the prior majority opinion. Based on the factual showing by Mariners Church, the trial court properly granted summary judgment because there now is no material issue of fact concerning whether the statements made following Gunn's termination were part of the process of his termination. Gunn did not dispute the evidence put forth by Mariners Church that it was part of established church practice to explain to congregants, or members of the church directly affected by the particular pastoral leader's ministry, the reasons for termination of any pastoral leader after the leader's termination. Gunn himself had participated in such public disclosures about other church staff following termination of their employment. Mariners Church submitted evidence demonstrating it routinely gave such explanations to the congregation and that it had a religious purpose in doing so. And in his appellant's opening brief, Gunn concedes Mariners Church's assertion that once it terminated his employment, "it was required, as an integral and inseparable part of its religious process and mission, to inform the congregation of its religious reasons for doing so, is also clearly a matter of church governance covered by the ministerial exception."

Nonetheless, Gunn argues the ministerial exception is not applicable here. He specifically removes from this argument his allegation church leaders said that when asked, Gunn repeatedly lied to them about his sexual orientation, stating it is "peripheral to the main issue." Gunn complains that rather than tell the congregation the actual reason for his termination, i.e., that Gunn's sexual orientation conflicted with the church's theology, Beshore instead told the congregation Gunn was disqualified from leadership because he had been "caught in a sin," had admitted to "moral and sexual actions that are sin," had suffered "a breakdown in character," and was a "broken man." Gunn asserts the ministerial exception does not apply to the latter category of statements because the "truth" of those specific statements can be determined based on purely secular principles and a jury would not be required to consider the religious beliefs of the church in deciding if Beshore's statements were true or false or constituted an invasion of Gunn's privacy. But Gunn's argument as to these statements has already been rejected by us in our earlier opinion in which we specifically held truth or falsity of those statements necessarily requires inquiry into the doctrinal beliefs of Mariners Church—something we cannot undertake to do. (*Gunn I, supra,* G032304.) Furthermore, once it has been established the statements were made in relation to the process of Gunn's termination the ministerial exception applies regardless of the tortious nature of the statements. (See *Higgins v. Maher, supra,* 210 Cal.App.3d at p. 1176; *Gunn I, supra,* G032304.)

Gunn also argues the ministerial exception can have no application to statements made or acts that occurred *after* a pastoral employee's employment has been terminated. But as we have already concluded, the exception applies to "otherwise actionable claims of defamation and invasion of privacy, when based on statements 'related to the hiring, firing, discipline or administration of clergy.' (*Higgins, supra*, 210 Cal.App.3d at p. 1175.)" (*Gunn I, supra*, G032304.) And that would encompass posttermination acts if they were part of the process of termination. This is not a case, as Gunn characterizes it, in which Mariners Church's acts occurred at some remote time unrelated to the termination of his pastoral employment. Gunn was removed from his position on Tuesday, he prepared a statement that he agreed could be read to the church choir disclosing the details of his sexual orientation and explaining why he was leaving his church post, and at church services the following Sunday, Beshore made his comments to the congregation in accordance with the church's established practice and doctrine. The undisputed evidence is that Beshore's act of explaining to the congregation the reasons for Gunn's departure were, as described in *Higgins v. Maher, supra*, 210 Cal.App.3d at pages 1175–1176, "part and parcel" of Gunn's termination. Thus, the ministerial exception applies to preclude further judicial review regardless of the otherwise tortious nature of the statements.

### ii. *Gunn has waived his argument concerning statements he lied.*

In a separate argument, Gunn challenges the trial court's conclusion he could not prevail on his defamation cause of action based on his allegation church elders repeatedly told church staff and the congregation Gunn "had been asked 40 or 50 times if he were gay and had lied and said that he was not." The only evidence Gunn could produce to support the allegation was his testimony that one of the former individual defendants, a church elder, told Gunn's former secretary's husband, who was not a church member, Gunn had lied to church leaders about his sexual orientation. Gunn testified he had heard through the grapevine such comments were being made about him within the church community, but he could not identify any specific person who allegedly made such comments or anyone within the church who had heard the comments.

Gunn's argument on appeal concerning this aspect of the trial court's ruling consists of two sentences unsupported by any legal analysis or citation to any legal authority. Gunn claims (1) his lack of personal knowledge "does not mean that he will be unable to prove the allegation with other evidence . . ."; and (2) the stipulation the acts of the individual defendants were within the course and scope of their employment or agency relationship with Mariners Church "directly contradict[s] the court's finding." "It is an established rule of appellate procedure that an appellant must present a factual

analysis and legal authority on each point made or the argument may be deemed waived. [Citations.]" (*People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200 [128 Cal.Rptr.2d 861].) Gunn's failure to provide us with any cogent analysis of his argument waives his claim on appeal. (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 [71 Cal.Rptr.3d 775] ["appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority"].)

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Sills, P. J., and Aronson, J., concurred.

A petition for a rehearing was denied September 30, 2008, and appellant's petition for review by the Supreme Court was denied January 14, 2009, S167528. George, C. J., did not particpate therein.