Filed 6/25/13  Marriage of Loveman CA2/6
Opinion following rehearing

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of MAUREEN and STEPHEN LOVEMAN. | 2d Civil No. B237481 (Super. Ct. No. SD037831) (Ventura County) ON REHEARING |
| MAUREEN LOVEMAN,  Petitioner and Respondent,  v.  STEPHEN LOVEMAN,  Respondent and Appellant. | |

Stephen Loveman, proceeding in propria persona, appeals from (1) a postjudgment order setting permanent spousal support at $3,000 per month, (2) an order denying his request to set aside the support order, and (3) an order requiring him to pay the reasonable attorney fees of his former wife, respondent Maureen Loveman.  We affirm the first and second orders and reverse the third order.

*Factual and Procedural Background*

The parties married in June 1986 and separated in August 2008.  They have two adult daughters.

1

In March 2009 a judgment of dissolution was entered pursuant to the stipulation of the parties. Appellant agreed to transfer to respondent $111,250 from his share of a thrift savings plan. Respondent agreed to transfer to appellant her interest in the family residence and waive spousal support for two years. Beginning on April 1, 2011, appellant agreed to pay respondent monthly spousal support of $3,000. This amount was calculated by using the DissoMaster program.[1] The exact DissoMaster support figure was $3,132.

In June 2011 appellant filed an order to show cause for modification of spousal support. In a supporting declaration, appellant stated that his "financial situation has deteriorated" because he "spent over $45,000 to support [his] two daughters in college." In January 2011 he withdrew $55,800 from his thrift savings plan. He used this money to pay "off some of the credit cards that [he had] used to finance [his] daughters' college expenses." Because of his "current tax situation, including an early withdrawal penalty, [he] will owe an additional $21,000.00 in taxes . . . ."

Appellant attached an Income and Expense Declaration showing that his average monthly gross income was $9,838 with deductions of $546 for health insurance premiums and required retirement payments. His average monthly estimated expenses were $9,689, including non-mortgage debt payments of $3,834. His total non-mortgage debt was $72,796. He had deposit accounts of $14,000, other liquid assets of $12,000, and $5,000 equity in his residence. His two adult daughters were living with him, but they were not paying any of the household expenses.

Respondent filed opposition to the request for modification of spousal support. Respondent declared that she was 52 years old, that she had not worked since 1982, that she had "actively sought employment to no avail," and that she was "living at [her] parent's house because [she did] not have an income." Respondent filed an Income and

---

[1] The DissoMaster program is "a privately developed computer program which was intended to be used to calculate *temporary* support." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 522.)

2

Expense Declaration showing that she had no income and that her average monthly estimated expenses were $3,170, including rent of $1,500. Her only assets were $30,000 in deposit accounts. She had no debt.

On July 20, 2011, the trial court conducted a hearing on the request to modify spousal support. The court considered the request to be a motion to set permanent spousal support pursuant to paragraph 4.7 of the stipulated judgment of dissolution. Paragraph 4.7 provided: "The Parties stipulate and agree that the Court shall retain jurisdiction to establish a permanent spousal support order and for the court to consider all factors as enumerated in Family Code § 4320. . . . At any time, either Party may file an OSC [order to show cause] or a Request for Trial Setting to establish and/or challenge the amount and duration of spousal support."[2] Based on paragraph 4.7, the court ruled that "this is a de novo proceeding today" and "there is no obligation to show a change of circumstances in order to . . . adjudicate spousal support based upon all the factors contained in Family Code section 4320."[3]

The court orally denied appellant's request to modify spousal support. It set permanent spousal support at $3,000 per month. The court stated: "[H]aving considered the [section] 4320 factors to the extent that such evidence has been presented, I find that $3,000 a month is a perfectly satisfactory spousal support order . . . ." Neither party requested a statement of decision nor asked the court to specify the section 4320 factors that it had considered. A written spousal support order was filed in August 2011.

Appellant moved for a new trial. In October 2011 the court denied the motion and made additional written findings concerning its ruling on July 20, 2011. The court found, inter alia, "that the parties had achieved a middle standard of living at the time of separation." The court also found that respondent "is living with her parents and paying

---

[2] Unless otherwise stated, all statutory references are to the Family Code.

[3] "A spousal support order is modifiable only upon a material change of circumstances since the last order." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.

3

them rent." The court concluded that appellant's "continuing contributions to the support of the parties' adult children is not a factor the court can consider."

In February 2012 the trial court orally ordered appellant to pay respondent's attorney fees of $10,000. A written order was filed in March 2012. In the written order the court found that appellant "has the ability to pay the sums awarded and that [respondent] has the requisite need to warrant this order."

On June 7, 2012, the trial court filed a written order entitled: "Statement of Decision and Ruling on [Appellant's] Request to Set Aside the Support Order of July 20, 2011, Pursuant to Family Code Section 3691." (Bold and some capitalization omitted.) In its statement of decision, the court noted that the request had been filed on August 19, 2011. The request, however, is not included in the record on appeal.[4] The court found that respondent had committed actual fraud and perjury by stating in her Income and Expense Declaration that she was paying monthly rent of $1,500. In fact, respondent "was then living rent-free with her parents."[5] Nevertheless, the court denied appellant's request to set aside the support order. The court concluded that respondent's "misrepresentation of her actual expenses did not materially affect the court's order of July 20, 2011."

---

[4] The record on appeal contains only one document filed on August 19, 2011: appellant's order to show cause for attorney fees and costs and sanctions pursuant to section 271.

[5] The trial court also found that, in her Income and Expense Declaration, respondent had inflated her monthly automobile expense by $500 and had omitted an IRA account of $150,062. As to the automobile expense, the court found "this to have been careless error [not actual fraud or perjury] on her part." As to the IRA omission, the court found that appellant "was fully aware of the existence of and substantial assets in [respondent's] IRA at all relevant times prior to the hearing of July 20, 2011." The court concluded that respondent's omission of the IRA account was an "inadvertent mistake . . . and had no [e]ffect upon the court's order of July 20, 2011." The court stated that it would not require respondent to make withdrawals from her IRA to support herself because of the steep penalties that she would be required to pay. Respondent was 53 years old, and she could not make penalty-free withdrawals until the age of 59 1/2.

4

*Appellant's Failure to Comply with Rules of Appellate Procedure*

Appellant's 47-page opening brief fails to comply with the rules of appellate procedure. " 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary. [Citations.]" (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700; see also *Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 217-218 [" 'an appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived' "]).

Many of appellant's arguments are not supported by meaningful legal and factual analysis with record references. An example is argument E.1 at pages 32-33 of appellant's opening brief. In this argument appellant accuses the trial court of being "a conduit for corruption" because it granted respondent's request for attorney fees based on her counsel's "perjurious statements," even though appellant had "brought this perjurious conduct to the court's attention in his 10/11/2011 Response declaration."[6]

The California Rules of Court require that a brief "[s]tate each point under a separate heading or subheading summarizing the point . . . ." (Rule 8.204(a)(1)(B).) "This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so

---

[6] Appellant also accuses the trial judge of committing perjury. He requests "that Judge Smiley be removed from this matter and be censured and /or removed from office due to his complete disregard for and mockery of the laws which he has sworn to uphold." Appellant states that on September 10, 2012, he "filed a 17 page complaint with the Commission on Judicial Performance citing Judge Smiley's numerous violations of his oath of office."

arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' [Citations.]" (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) "The failure to head an argument as required by California Rules of Court, rule [8.204(a)(1)(B)] constitutes a waiver. [Citations.]" (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4)

Many of appellant's arguments are not presented under a separate heading. For example, argument B. on page 23 is headed, "July 20, 2011 Attorney Misconduct and the Court's Reliance on it." (Bold omitted.) But in the first paragraph of the argument, appellant contends that the trial court erroneously "failed to make a finding as to the parties' marital standard of living . . . as required under [§] 4332 and simply granted [respondent's] request [for monthly spousal support]." In the second paragraph, appellant contends that "the court made its ruling without considering Appellant's lack of funds available due to his monthly expenses and $40,000 in debts including debts to the IRS and Franchise Tax Board, violating paragraph 4.7 of the parties' stipulated agreement, and the mandatory factors contained in [§] 4320." These contentions have nothing to do with attorney misconduct.

That appellant is proceeding in propria persona is no excuse for his failure to comply with the rules of appellate procedure.[7] "When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]. Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney [citation]." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639.)

We consider only those arguments that are properly presented under a separate heading summarizing the point to be made in the argument. In addition, we consider only those arguments supported by meaningful factual and legal analysis with pertinent citations to the record and legal authority. All other arguments are waived.

---

[7] Appellant told the trial court that he is an inactive member of the California State Bar and has never practiced law.

*Discussion*

Appellant's cognizable arguments are threefold.

First Argument

The first cognizable argument is that the trial court abused its discretion on July 20, 2011, when it set permanent spousal support at $3,000 per month.  "Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360.  Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.' [Citations.]  The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and equitable award.  (§ 4320, subds. (c)-(e), (n).)  'The trial court has broad discretion in balancing the applicable statutory factors and determining the appropriate weight to accord to each, but it may not be arbitrary and must both recognize and apply each applicable factor.' [Citation.]"  (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442-1443.)  " ' "Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing [spousal support] orders." [Citation.]' [Citation.]"  (*In re Marriage of Drapeau* (2001) 93 Cal.App.4th 1086, 1096.)

"[W]e review spousal support orders under the deferential abuse of discretion standard.  [Citation.]"  (*In re Marriage of Blazer*, *supra*, 176 Cal.App.4th at p. 1443.) " 'A trial court's exercise of discretion will not be disturbed on appeal unless, *as a matter of law,* an abuse of discretion is shown—i.e., where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances. [Citations.]' [Citation.]"  (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480.) " 'To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range of the evidence

7

presented." ' [Citation.]" (*In re Marriage of Blazer*, *supra*, 176 Cal.App.4th at p. 1443.) Appellant does not fully appreciate the fair import of these traditional rules of appellate review. (See e.g., *In re Gilkison* (1968) 65 Cal.4th 1443, 1448-1449.)

The trial court did not abuse its discretion. Appellant's income and expense declaration showed that his average monthly gross income was $9,838 with deductions of $546 for health insurance premiums and required retirement payments. Although his average monthly estimated expenses ($9,689) exceeded his gross monthly income after the deductions ($9,292), these expenses included non-mortgage debt payments of $3,834. "The obligation to provide for the wife is not subordinate to [debts] owed other persons." (*Rosenthal v. Rosenthal* (1961) 197 Cal.App.2d 289, 298.) Furthermore, a substantial portion of appellant's non-mortgage debt payments was attributable to expenditures he had made for his adult daughters' college education. In addition, appellant was subsidizing his daughters' living expenses. His Income and Expense Declaration showed that they were living with him, but were not paying any of the household expenses. Neither party had a legal obligation to support the adult daughters or fund their college education. (*In re Marriage of Serna* (2000) 85 Cal.App.4th 482, 489, 491.) It would be improper to allow "a reduction in what a supporting spouse pays because that spouse has voluntarily undertaken a duty that the supported spouse has no obligation to fund." (*Id*., at p. 492, fn. omitted.)

Unlike appellant, respondent was unemployed and had no income. Her Income and Expense declaration showed monthly estimated expenses of $3,170. In these circumstances, the trial court did not exceed the bounds of reason in setting permanent support at $3,000 per month.

Nevertheless, appellant argues that the trial judge abused his discretion because he "failed to state with particularity any of the [section 4320] factors he considered in the July 20, 2011 hearing. He simply stated that he had considered the factors, but failed to delineate which factors, or the respective weight of each factor." Section 4320 provides

that the court "shall consider all" of the factors "[i]n ordering spousal support." The statute does not require express findings on each factor.[8]

If appellant wanted an explicit analysis of each of the applicable section 4320 factors, he should have requested a statement of decision (Code Civ. Proc., § 632) at the hearing on July 20, 2011. (See *Hebbring v. Hebbring* (1989) 207 Cal.App.3d 1260, 1274; *In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1125-1126 [judgment of dissolution reversed because trial court failed to render a timely requested statement of decision on issues of child and spousal support].) If the statement of decision had omitted applicable factors, appellant would have been required to bring the deficiency to the court's attention to avoid a waiver. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134; *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.) But appellant did not request a statement of decision. "In reviewing a judgment without a statement of decision the appellate court indulges every intendment in favor of the judgment, and assumes the trial court found every essential fact to support the judgment." (*In re Marriage of Jones* (1990) 222 Cal.App.3d 505, 515.) We therefore assume that the trial court did what it said it had done: that it had properly "considered the Family Code § 4320 factors."

*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, is distinguishable. In *Geraci* the appellate court reversed an award of spousal support because "the record provide[d] inadequate grounds to accord the usual deference to the [trial] court's exercise of discretion in making the award of spousal support." (*Id*., at p. 1299.) The appellate court noted that "[o]ther than the [trial] court's general assertion the factors listed in section 4320 favored an award of spousal support to [wife] the record provides no insight into how the court weighed the statutory factors and thus how it exercised its discretion." (*Id*., at p. 1297.) The appellate court also noted that "the evidence presented in this case raises some question whether the [trial] court in fact weighed or even gave due consideration to the statutory factors." (*Id*., at p. 1298.)

---

[8] Section 4332, in contrast, requires the court to "make specific factual findings with respect to the standard of living during the marriage."

9

Unlike the instant case, in *Geraci* the trial court issued a statement of decision. "It is the statement of decision which allows the court to place upon *the record* its view of facts and law of the case. [Citation.] A failure to request a Code of Civil Procedure section 632 statement results in a waiver of such findings; [appellant] cannot now be heard to complain. [Citation.]" (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647.)

Moreover, in contrast to *Geraci*, the evidence presented here does not indicate that the trial court failed to weigh or give due consideration to the statutory factors. In its statement of additional findings filed on October 25, 2011, the trial court expressly considered several section 4320 factors, including the age and health of the parties, their hardships, the duration of the marriage, the needs of each party based on the marital standard of living, and the earning capacity of each party. The court stated: "The determination of this issue [permanent spousal support] calls for a consideration of all of the circumstances or factors set forth in Family Code section[] 4320 . . . ."

Second Argument

Appellant's second cognizable argument is that the trial court erroneously denied his request to set aside the support order of July 20, 2011, pursuant to section 3691. Again we review the denial for abuse of discretion. (See *In re Marriage of King* (2000) 80 Cal.App.4th 92, 118.)

Appellant's request is not included in the record on appeal. Its omission precludes meaningful review. "It was [appellant's] burden . . . to present an adequate record for review. [Citation.] Having failed to do so, the [order denying his request] must be affirmed. [Citation.]" (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

In any event, based on the record before us, the trial court did not abuse its discretion in denying appellant's request to set aside the support order of July 20, 2011. Section 3691 provides that the grounds for setting aside such an order are actual fraud, perjury, or lack of notice. The court found that respondent had committed actual fraud and perjury by stating in her Income and Expense Declaration that she was paying monthly rent of $1,500 when she was actually "living rent-free with her parents." But a

10

finding of actual fraud or perjury is not alone sufficient to warrant the setting aside of a support order under section 3691. "[B]efore granting relief, the court [must] find that the facts alleged as the grounds for relief materially affected the original order." (§ 3690, subd. (b).) "[A] support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate." (§ 3692.)

The trial court found that respondent's misrepresentation of her rental expense "did not materially affect [its] order of July 20, 2011." Appellant has not shown that this finding exceeded the bounds of reason so as to constitute an abuse of discretion. He cites no authority requiring that spousal support not exceed the supported spouse's actual expenses. In setting spousal support, one of the factors to be considered is "[t]he needs of each party based on the standard of living established during the marriage." (§ 4320, subd. (d).) The trial court determined that respondent's needs based on the marital standard of living exceeded her monthly expenses of $1,670 (expenses of $3,170 on the Income and Expense Declaration less rental expense of $1,500).[9] The court also impliedly determined that respondent should not be penalized for living frugally. The court reasoned: "Where, as here, the supported spouse has no income, largely as a result of the devotion of time to domestic duties in a marriage of long duration, and the income of the supporting spouse is insufficient to permit both parties to live at the marital standard of living, the court's primary task is 'to fairly allocate the funds that [are] available.' [Citations.]" The court concluded that, in view of the parties' middle standard of living and appellant's gross monthly income of $9,838, monthly spousal support of $3,000 was a fair allocation of the available funds. The court noted that it had considered "the 'expenses' of both parties . . . in the context of the 'needs of each party based upon the marital standard of living.' [Citation.]"

---

[9] Respondent's actual expenses were less than $1,670. (See fn. 5, *ante*.) But the grounds for setting aside the support order were actual fraud or perjury, and the trial court found that respondent had committed actual fraud or perjury only as to the rental expense. (*Ibid.*)

11

Third Argument

Appellant's third cognizable argument is that the trial court abused its discretion in ordering him to pay respondent's attorney fees of $10,000 at a rate of $850 per month beginning March 1, 2012. The order was made pursuant to sections 2030 and 2032.

Pursuant to "sections 2030 and 2032, the trial court [has discretion] to award fees and costs between the parties based on their relative circumstances in order to ensure parity of legal representation in the action. It is entitled to take into consideration the need for the award to enable each party to have sufficient financial resources to present his or her case adequately." (*In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 974-975, fn. omitted.) The rules attendant to abuse of discretion are well known and need not be repeated. (*Estate of Gilkison* (1998) 65 Cal.App.4th 1445, 1448-1450.)

We consider appellant's last Income and Expense Declaration filed in January 2012. Appellant had deposit accounts of $200, liquid assets of $3,000, and $5,000 equity in his residence. He continued to have gross monthly earnings of $9,838. His monthly expenses had increased to $12,418. This was because his monthly non-mortgage debt payments had increased 63 percent to $6,258, compared to $3,834 in June 2011. Another person (apparently his eldest daughter) had paid $500 of appellant's monthly expenses, reducing them to $11,918. Disregarding, for purposes of discussion, appellant's monthly non-mortgage debt payments, his monthly unreimbursed expenses (living expenses) were $5,660 ($11,918 - $6,258 = $5,660). In addition to these expenses, he was required to pay monthly spousal support of $3,000, increasing his expenses to $8,660, only $1,178 less than his gross monthly earnings of $9,838.

Appellant's January 2012 Income and Expense Declaration includes a statement of earnings from his employer for the four-week period from November 20, 2011, through December 17, 2011. Appellant's gross income for this period was $9,083. His total deductions, excluding deductions of $1,659 for spousal support and $454 for

contributions to a Thrift Savings Plan (TSP), were $5,933.[10] With these exclusions, appellant's take-home pay was only $3,150.

From his take-home pay of $3,150, appellant was expected to pay more than $8,000 in living expenses and spousal support. Living expenses and spousal support are relevant factors in apportioning attorney fees. (*Alan S., Jr. v. Superior Court* (2009) 172 Cal.App.4th 238, 253; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 867-868.) With only $200 in the bank and $3,000 in liquid assets, appellant had to rely on his take-home pay. Moreover, appellant owed $4,200 for services provided by his former attorney, and his credit card debt of $47,500 included payments of $12,000 that he had already made to his attorney.[11] "[T]he record does not sufficiently reflect . . . any consideration of [appellant's] needs to pay his *own* outstanding legal fees . . . . Yet the court in making the order was required to 'take into consideration the need for the award to enable *each* party, to the extent practical, to have sufficient financial resources to present the party's case adequately.' (§ 2032, subd. (b).)" (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 868.)

When the trial court ruled on the motion for attorney fees, respondent's last Income and Expense Declaration had been filed on September 29, 2011. In that declaration, respondent continued to show expenses of $3,170, including rent of $1,500. The trial court had not yet found that respondent had inflated her expenses. But respondent's declaration showed that she had cash and deposit accounts of $30,000 and an IRA of $130,000. She had no debt. In view of the $3,000 monthly spousal support order, her financial situation was far superior to appellant's.

Accordingly, we conclude that the trial court's fee order "exceeds the bounds of reason." (*Estate of Gilkison, supra,* 65 Cal.App.4th at p. 1449; see also *In re Marriage of*

---

[10] The deductions included Social Security, Medicare, regular federal and state tax withholding plus extra tax, health insurance, retirement, and $561.88 in TSP loan repayments.

[11] In his opening brief, appellant states that, on September 28, 2011, he "was forced to file pro per since he could no longer afford an attorney."

13

*Cryer* (2011) 198 Cal.App.4th 1039, 1055 ["The family court is guided by section 2032, which provides that an award may be made when the award and amount are 'just and reasonable under the relative circumstances of the respective parties' "].) Although the trial court found that appellant "has the ability to pay the sums awarded," that finding is not supported by the evidence.

### *Disposition*

The order requiring appellant to pay respondent's attorney fees of $10,000 is reversed. The other orders appealed from are affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

John W. Smiley, Judge

Superior Court County of Ventura

_____

Stephen Loveman, in pro per, Respondent and Appellant.

Diane L. Rowley, for Respondent and Petitioner.

15