Filed 8/31/15  Rodriguez v. Rodriguez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARIO A. RODRIGUEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARIA E. RODRIGUEZ,<br><br>    Defendant and Respondent. | B255638<br><br>(Los Angeles County<br>Super. Ct. No. PC045709) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

        Nehoray Legal Group and Mac E. Nehoray for Plaintiff and Appellant.

        Paul Libis and Ayman I. El-Sharkawi for Defendant and Respondent.

_____

For nine years Mario Rodriguez and Maria Rodriguez have been engaged in litigation seeking to divide real and personal property acquired, as well as income from a trucking business started, while they were living together. After Mario filed an action to enforce a settlement agreement that Maria had tried to rescind, they agreed to submit the matter to binding arbitration. Mario appeals from the judgment entered after the superior court granted Maria's petition to confirm the arbitration award, contending the judgment does not reflect its terms, is arbitrary and conflicts with the parties' stipulation to arbitrate. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2006 Maria filed a lawsuit for partition to divide her and Mario's property, including the trucking business started while they were living together. In April 2008 judgment was entered awarding Maria a 50 percent interest in the parties' property, as well as 50 percent of the income generated by the trucking business from June 30, 2002 through the date of sale of the business or a mutually agreed upon alternative disposition. A receiver was appointed to value the property and ascertain the income, and the parties were each ordered to pay half the receiver's fees and costs. The receiver's duties were subsequently expanded to include performing all of the accounting and banking for the business, and the court granted Maria's request that Mario be ordered to pay 100 percent of the receiver's fees and costs because of his lack of cooperation with the receiver.

In mid-December 2008 the parties agreed to settle their dispute over the value of the business. Through counsel, Mario and Maria orally agreed to award the trucking business to Mario with a $30,000 equalization payment to Maria. Shortly thereafter Maria demanded the agreement be renegotiated in light of findings in a report issued by the receiver. On December 18, 2008 Mario and Maria signed a settlement agreement providing Mario was to receive the trucking business and property they owned in El Salvador. Maria was to receive property they owned in Kern County; all the proceeds from the sale of their home in Arleta after all liens, encumbrances, escrow costs, receiver's fees (approximately $60,000 prior to the close of escrow) and broker

2

commissions had been paid; the van she was driving; and a $50,000 equalization payment. The agreement further provided Mario would pay Maria's attorney $5,000, but the parties would otherwise be responsible for their own legal fees and costs.

On February 18, 2009 Maria moved in the partition action to cancel the settlement agreement based on fraud in the inducement. The court denied the motion on the ground Maria had neither pleaded a cause of action for rescission nor filed a proper summary judgment motion. On May 12, 2009 the court granted the receiver's motion to terminate the receivership and granted Maria's request that the net proceeds from the sale of the Arleta property be frozen in Mario's attorney's trust account until further order of the court. By then, the cost of the receiver had increased to $95,000 as a result of work performed subsequent to execution of the settlement agreement.

On June 17, 2009 Mario filed the instant action for breach of the December 2008 settlement agreement. Maria filed a cross-complaint seeking to rescind the settlement agreement.[1] In July 2010 Mario filed notices of related case in both the original partition action, which had essentially terminated in May 2009, and the instant action. Although neither the record on appeal nor the superior court case summaries indicate whether the two cases were formally related, in April 2012 the instant action was reassigned to Department 50F (Hon. Randy Rhodes), the same department in which the partition action had been pending.

In August 2010 the parties agreed to submit the matter to binding arbitration. The stipulation and order for binding arbitration in part provided, "The parties agree that the amount in controversy is $121,382," which represented the net proceeds from the sale of the Arleta property; "[t]he minimum award for each party shall be $35,000.00 and the maximum award for each party shall be $75,000,"[2] but these "high[s] and lows shall not

---

[1]     The record on appeal does not include either the complaint or cross-complaint.

[2]     With respect to the disputed $121,382 sum, the agreement to arbitrate provided that $1,382 of the disputed sum would be paid to the arbitrator with the remaining costs of the arbitration to be divided equally by the parties. The prevailing party was entitled to recover $10,000 in attorney fees.

be disclosed to the Arbitrator." The parties further agreed the award "shall include a determination of all questions submitted to the Arbitrator the decision of which is necessary in order to determine the controversy," and "[t]he Arbitration shall encompass all of the claims each of the Parties may have against the other, all such claims being reasonably known to the Parties at this time."

The arbitrator issued a decision on May 30, 2011 although it was not served until August 3, 2012 because Mario had refused to pay his share of arbitration fees. Notwithstanding the provision in the stipulation limiting the amount in controversy to $121,382, the arbitrator ruled the scope of his authority was much broader than merely dividing the proceeds from the sale of the Arleta home: "While the stipulation certainly empowers the Arbitrator to divide the Arleta property sale proceeds held in the trust account it also provides a much broader mandate to 'include a determination of all questions submitted to the Arbitrator the decision of which is necessary in order to determine the controversy' and further provides that 'The Arbitration shall encompass all of the claims each of the parties may have against the other, all such claims being reasonably known to the parties at this time.' [Citation.] This latter language clearly includes Maria's known claims of fraud, breach of fiduciary duty and unenforceability of the settlement agreement. It is clear that the stipulation expressly and impliedly not only authorizes and mandates the Arbitrator to divide the Arleta property trust funds but also to address the issues of enforceability and validity of the settlement agreement itself and by logical inference, the respective rights and obligations of the parties flowing from said agreement or, in the alternative from the nullification and cancellation of the same."

Having concluded his authority was broader than dividing the proceeds from the sale of the Arleta home, contrary to Mario's contention, the arbitrator set aside the settlement agreement on the ground Mario had breached his fiduciary duties to Maria, who had not been fully informed of the financial status of the trucking business before signing the agreement, returning the parties to their status as of the April 2008 judgment awarding Maria a 50 percent interest in the parties' property and 50 percent of the income generated by the trucking business from June 30, 2002. The arbitrator explained, "[T]he

4

hiding and misrepresentations concerning the financial condition, substantial assets and income of said business for the years in question in a deliberate scheme to deprive [Maria] of her one half interest as mandated by the court in the underlying action is a clear breach of [Mario's] fiduciary obligations. . . . [¶] Mario continued his same pattern of concealment, misrepresentations, stonewalling and scheme to preclude Maria from her rightful ownership interests post judgment as he had for all the years prior to the judgment/order in the underlying case. . . . [¶] . . . Had Maria been informed of the entire financial picture, she would never have signed the settlement agreement. [¶] . . . The parties are put back into the same legal positions they were pre-settlement agreement as defined by the earlier judgment and orders in the underlying action. Accordingly, based on their respective 50% interest in the assets which are the subject of the underlying action, Maria and Mario are to equally divide the Arleta sale proceeds currently held in [Mario's attorney's] trust account. Since the settlement agreement has been cancelled and set aside, the attorney's fees provision contained therein is also set aside and as a result, each party is to bear their own attorney's fees in the instant action. The order re: payment of Receiver's fees and expenses issued against Mario in the underlying action stands unless modified or changed by the court in said action."[3] (Emphasis omitted.)

On April 26, 2013 Maria petitioned to confirm the arbitration award. On June 3, 2013, 10 months after the award had been served, Mario moved to set it aside on the ground the arbitrator had exceeded his authority because the stipulation and order to arbitrate had only authorized him to divide the proceeds from the sale of the Arleta home; Mario also opposed Maria's petition to confirm the award on this basis. Maria, in opposition to Mario's motion, in part argued it was untimely, exceeding by several months the 100-day deadline for a party to seek to vacate or correct an arbitration award under Code of Civil Procedure section 1288.

---

[3] The arbitrator did not rule on whether Maria should be required to restore the benefits she had received under the settlement agreement ($50,000) because the parties did not address the issue.

On September 12, 2013, after hearing oral argument, the court denied Mario's motion and granted Maria's petition to confirm the award. In its tentative decision the court in part explained, "Regardless of whether Mario's request for relief is timely, he has failed to establish a basis to set aside or vacate the arbitration award under [Code of Civil Procedure section] 1286.2. In fact, Mario does not even cite [Code of Civil Procedure section] 1286.2, which sets forth the grounds for vacation of an award, in his papers. Mario claims that the arbitrator exceeded his powers [because] his only task was to divide a specified sum of money; however, Mario claims the arbitrator exceeded his authority by setting aside the underlying settlement agreement entered [between] the parties. Mario's argument fails [because], in addition to dividing the $121,382.00 as set forth in the Stipulation and Order, the arbitrator's authority included 'all of the claims each of the parties may have against the other' that were reasonably known to the parties at that time, and also included a 'determination of all questions submitted' which were 'necessary in order to determine the controversy.'"[4]

The court scheduled a hearing to address the content and form of the judgment after arbitration for October 21, 2013. On October 17, 2013 Mario filed an objection to a proposed judgment submitted by Maria. A hearing was held on November 19, 2013, but continued to December 23, 2103 without final resolution of the judgment issues. (No reporter's transcript of this hearing has been included in the record on appeal.) On December 20, 2013 Mario filed an objection to a second proposed judgment submitted by Maria.

A further hearing was held on December 23, 2013 and again continued without the court reaching a final decision. (Again, the record on appeal does not include a reporter's transcript of this hearing.) On January 28, 2014 Maria filed a third proposed judgment, and judgment was entered on January 29, 2014 requiring Mario to pay Maria $630,000 and to transfer the Kern County property to her. The parties were ordered to bear their

_____

4       The record does not reflect whether the tentative decision was adopted.

6

own attorney fees and costs. The judgment stated, "All previous payments and transfers between the parties to the judgment have been taken into account in this judgment."

## DISCUSSION

1. *The Arbitrator Did Not Exceed the Scope of His Authority*

An arbitrator exceeds his or her power by deciding an issue that was not submitted to arbitration. (See *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 531; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443.) However, in determining whether arbitrators exceeded their powers within the meaning of the Code of Civil Procedure section 1286.2, subdivision (a)(4), courts must give "substantial deference to the arbitrators' own assessments of their contractual authority . . . ." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373.) A deferential standard is in keeping with the general rule of arbitral finality and ensures that judicial intervention in the process is minimized. (*Ibid.* ["[a] rule of judicial review under which courts would independently redetermine the scope of an arbitration agreement already interpreted by the arbitrator would invite frequent and protracted judicial proceedings, contravening the parties' expectations of finality"].)

Affording the arbitrator the requisite deference, he did not exceed the scope of his authority based upon the terms of the arbitration agreement to which he was privy, which did not include the high/low provision. Mario contends the high/low provision was intended to limit his maximum exposure and the provisions authorizing the arbitrator to resolve all the disputes between the parties and stating that the arbitration encompassed all claims between them were included "only to assist the arbitrator in arriving at a fair division of the amount in controversy." Not having been told about the high/low provision, the arbitrator's conclusion those provisions broadly authorized him to resolve Maria's "known claims of fraud, breach of fiduciary duty and unenforceability of the settlement agreement" was entirely reasonable. If he had known about the high/low provision, the arbitrator would have been able to explore with the parties whether they had intended to circumscribe his authority to resolve Maria's claims, which would

7

include the authority to set aside the settlement agreement. As written, however, the arbitrator's conclusion was sound: The amount in controversy if the settlement agreement had not been set aside was $121,382, but the arbitrator had the authority to set it aside and return the parties to their presettlement-agreement status.

### 2. *Mario Has Forfeited His Argument the Judgment Must Be Voided Because It Does Not Conform to the Arbitration Award or the Agreement To Arbitrate*

A judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.) It is the appellant's burden to affirmatively demonstrate reversible error. (*Denham,* at p. 564; *In re Marriage of Gray,* at pp. 977-978.) This burden includes: (1) providing an adequate record; (2) supporting all appellate arguments with legal analysis and appropriate citations to the material facts in the record (Cal. Rules of Court, rule 8.204(a)(1)(B), (C)); and (3) showing exactly how the error caused a miscarriage of justice. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 218; *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

Mario contends, regardless of the breadth of the arbitration award, and accepting that the award was within the scope of the arbitrator's authority, the judgment that was subsequently entered must be voided because it was not based on evidence and exceeded the high limit of $75,000 to which he and Maria had stipulated in the agreement to arbitrate. Mario, however, elected to proceed on appeal without providing a reporter's transcript from the hearings in the trial court, so we simply cannot determine how the court arrived at the $630,000 final judgment or whether the court committed error, let alone reversible error, in doing so.[5] Indeed, in his notice designating the record on appeal

---

5    It would certainly appear the court viewed the high/low limitation as only applicable to the division of the proceeds from the sale of the Arleta property, and not to the larger question of Maria's rights once the settlement agreement was set aside. But we have been precluded by the limited appellate record from learning the trial court's valuation methodology or the evidentiary basis for its final ruling. For example, we do

Mario acknowledged that, by electing to proceed without a record of the oral proceedings in the superior court, this court would "not be able to consider what was said during those proceedings in determining whether an error was made in the superior court proceedings." We are further hindered in our review by the fact that Mario's December 20, 2103 objection to the proposed judgment for $175,000, the only objection to the first two proposed judgments included in the record, was cursory at best, merely stating that the proposed judgment was "not supported by the binding arbitration award and/or the guidelines set forth in the Binding Arbitration Agreement between the parties."

At oral argument Mario's counsel asserted there was "absolutely no hearing" in the trial court to determine the content of the judgment. That statement, however, is belied by Mario's own reply brief. In response to Maria's argument hearings were held on November 19 and December 23, 2013 at which the court considered Mario's written objections to the proposed judgment and, at the November 19 hearing, additional oral objections, Mario argued, "In her Brief, [Maria] is trying to misrepresent to the court that the hearings which were held subsequent to each proposed judgment were set by the court in order to hear objections which is not true. Said hearing was set to make sure that [Maria] would present the court with Proposed Judgments. There is absolutely no record on appeal showing what was discussed during said hearings and [Maria's] statements as to what was discussed is not proper." The critical issue, of course, is not the reason the court set the hearings, but what was discussed at them. Mario concedes there were hearings. His election to proceed without transcripts from them, in conjunction with his cursory written objection, prevents us from assessing whether the court committed reversible error.

Mario also contends the judgment does not accurately reflect the award of the arbitrator. To be sure, when an arbitration award is confirmed, "judgment shall be entered in conformity therewith." (Code Civ. Proc., § 1287.4.) Facially, the judgment in

---

not know if the parties stipulated the court could consider the evidence from the partition action, over which the same judge had presided.

9

the instant matter is not identical to the arbitration award. However, by returning the parties to their presettlement-agreement status, resolving in Maria's favor the issues she had presented in the current lawsuit, the award also reopened issues that had been resolved by the voided settlement agreement in the parties' prior lawsuit. The judgment reflects resolution of those additional issues. As discussed, the procedure actually used and evidentiary basis for the ultimate determination of those issues are not disclosed by the inadequate appellate record before us. Accordingly, in light of the presumption in favor of judgments, we reject Mario's challenge based on the apparent disparity between the arbitrator's decision and the judgment confirming the award. (See *Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.* (2006) 136 Cal.App.4th 999, 1003-1004, fn. 1 [record is inadequate when it "'appears to show *any* need for *speculation or inference* in determining whether error occurred'"]; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 [burden is on appellants to provide adequate record on appeal to demonstrate error; failure to do so precludes an adequate review and results in affirmance of the trial court's determination].)

Finally, citing California Rules of Court, rule 3.1590(j), Mario argues the judgment should be voided because he was not given an opportunity to object to Maria's third proposed judgment. Rule 3.1590 specifies procedures to be used by trial courts to implement Code of Civil Procedure section 632's mandate that courts issue a statement of decision explaining the factual and legal basis for their decisions upon the trial of a question of fact by the court. Nothing in that rule, including the right of a party to file objections within 10 days after service of a proposed judgment, applies to the hearing on a petition to confirm an arbitration award pursuant to Code of Civil Procedure section 1285, or to entry of a judgment after an arbitration award has been confirmed. Moreover, even if it was error to enter the judgment without first permitting Mario to file yet another round of objections, Mario has failed to meet his burden of demonstrating that error was prejudicial, that is, that a different result would have been probable. (See Code Civ. Proc., § 475 [no judgment shall be reversed absent showing error was prejudicial]; *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012)

10

212 Cal.App.4th 1181, 1196-1197 [prejudice will not be presumed; burden rests with party claiming error to demonstrate not only error, but also resulting miscarriage of justice].)

## DISPOSITION

The judgment is affirmed. Maria is to recover her costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

STROBEL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.