[No. H031574. Sixth Dist. Aug. 25, 2009.]

In re the Marriage of SCOTT and KAREN NICKLES BLAZER.
SCOTT BLAZER, Appellant, v.
KAREN NICKLES BLAZER, Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of (1) all but the first two and the last two paragraphs of the section entitled "Background," and (2) parts II.A, II.C, and III of the section entitled "Discussion."

COUNSEL

Sucherman Insalaco, Michelene Insalaco, Lowell H. Sucherman and Janet Simmonds for Appellant Scott Blazer.

C. Michael McClure for Appellant Karen Nickles Blazer.

OPINION

**McADAMS, J.**—In this marital dissolution case, both parties challenge a spousal support order. In her appeal, the wife asserts that the trial court abused its discretion in reducing temporary spousal support and in setting permanent support. She contends that the court failed to account for all of the husband's income and that it erred in imputing investment income to her. In his cross-appeal, the husband contends that the permanent spousal support order unfairly charges him a second time for earnings from the business that he operates. In his view, since the wife received half of the business's going-concern value in the property division, the court should not consider the entire stream of business income in assessing his ability to pay support. The husband asks us to announce a new rule in California prohibiting such "double dipping."

Rejecting both parties' contentions, we affirm the challenged order. In the published part of the opinion, we conclude that the trial court acted within its discretion in determining the husband's income for purposes of spousal support.

## BACKGROUND

The parties to this appeal are Scott Blazer (husband) and Karen Nickles Blazer (wife). Husband and wife married in November 1982 and separated in January 2002. There are two children of the marriage, both now adults.

The principal marital asset was a company created in 1996 by husband and a business partner, called Blazer-Wilkinson LLC (BW). BW is a brokerage company that buys and sells produce, principally strawberries and bush berries. In 2004, the court valued the community interest in BW at $5.6 million.

*2002—Dissolution; Temporary Support**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*2007—Order; Appeals*

In March 2007, the court entered a formal order that was consistent with its August 2006 statement of decision, entered after the trial held in December 2005 and January 2006. The order reduces temporary spousal support from $52,000 per month to $30,000 per month, effective August 15, 2004 (consistent with the parties' prior stipulation permitting modification retroactive to that date); it sets permanent spousal support at $20,000 per month, effective January 1, 2006.

In May 2007, wife filed a notice of appeal and husband filed a notice of cross-appeal. The following month, husband asked this court to dismiss wife's appeal as untimely on the ground that the March 2007 order merely formalized the court's earlier ruling. We denied husband's dismissal motion.

## CONTENTIONS

In her appeal from the May 2007 spousal support order, wife argues that the trial court abused its discretion (1) in excluding part of husband's income when considering his ability to pay support and (2) in imputing investment income to her.

In response to wife's appeal, husband defends the order against the two arguments that she offers. He also asserts that wife has forfeited her claims by failing to comply with appellate rules. In his cross-appeal, husband challenges the order on the same ground offered below—that it permits wife to unfairly

---

*See footnote, *ante,* page 1438.

"double dip" into the income stream from his business. He posits this challenge as an issue of first impression in California and a question of law.

## DISCUSSION

To establish the proper framework for our analysis, we begin by summarizing the applicable legal principles before turning first to wife's appeal and then to husband's cross-appeal.

### I. *Legal Principles*

#### A. *Spousal Support*

■ The trial court is authorized to order and to modify temporary and permanent spousal support, as provided in the Family Code.[1]

##### 1. *Temporary Support*

■ The trial court has statutory authority to order temporary spousal support while a marital action is pending. (§ 3600.) "Temporary support . . . usually is higher than permanent support because it is intended to maintain the status quo *prior* to the divorce." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 522 [70 Cal.Rptr.2d 488].) The trial court has broad discretion to determine the amount of temporary spousal support, considering both the supported spouse's need for support and the supporting spouse's ability to pay. (*In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 165 [18 Cal.Rptr.2d 743].)

##### 2. *Permanent Support*

■ Permanent spousal support "is governed by the statutory scheme set forth in sections 4300 through 4360. Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320." (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1559 [44 Cal.Rptr.3d 52]; see *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 302 [111 Cal.Rptr.2d 755].) The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and equitable award. (§ 4320, subds. (c)–(e), (n).) "The trial court has broad

---

[1] Unspecified statutory citations in this opinion are to the Family Code.

discretion in balancing the applicable statutory factors and determining the appropriate weight to accord to each, but it may not be arbitrary and must both recognize and apply each applicable factor." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 207 [52 Cal.Rptr.3d 744].)

### B. *Appellate Review*

As a general rule, we review spousal support orders under the deferential abuse of discretion standard. (*In re Marriage of Nelson, supra,* 139 Cal.App.4th at p. 1559.) We examine the challenged order for legal and factual support. "As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it." (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 625 [108 Cal.Rptr.2d 833]; see *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1286 [51 Cal.Rptr.3d 234].) "To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld 'as long as its determination is within the range of the evidence presented.' " (*In re Marriage of Ackerman, supra,* 146 Cal.App.4th at p. 197.)

Where a question of law is presented on undisputed facts, appellate review is de novo. (See, e.g., *Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532, 1536 [22 Cal.Rptr.3d 447] [interpretation of child support statute presents question of law]; *In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, 736 [28 Cal.Rptr.2d 447] [on undisputed facts, date of separation is a question of law]; cf. *In re Marriage of Duncan, supra,* 90 Cal.App.4th at p. 625, fn. 5 [rejecting wife's bid for de novo review where the evidence was in conflict].)

With those principles in mind, we consider the issues raised here. We begin with wife's appeal.

## II. *Wife's Appeal*

### A. *Forfeiture*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Exclusions from Husband's Income*

### 1. *Pertinent Facts*

In assessing husband's income for spousal support purposes, the court excluded funds used to capitalize BW and to vertically integrate the business.

---

[*]See footnote, *ante,* page 1438.

In the court's words: "The need to maintain higher capitalization in the company and the need to diversify the company's work are reasonable expenses that should not be charged against [husband's] income but rather should be taken out of the company before assessing what his reasonable income is for purposes of support." Wife assigns this determination as error.

On the question of capitalization, the court heard testimony from two experts.

Husband's expert witness was certified public accountant Richard Wilkolaski. Wilkolaski described BW as "very thinly capitalized for a business" with such high gross revenue. Husband had drawn down his capital account at BW by more than $1 million in the three years from January 2002 to December 2004. Wilkolaski opined that the company was "endangered" by the level of capital, which instead "should be building back up again." Based on some 30 years of forensic accounting, Wilkolaski understood that capital account withdrawals are not income available for spousal support.

Wife called certified public accountant Jeffrey Wriedt as her expert witness. Wriedt agreed that husband's BW capital account had declined. He characterized BW as "probably slightly undercapitalized." And Wriedt agreed with Wilkolaski that "probably more money should have been left in the business." Since he is not "a legal expert," Wriedt could not say whether spousal support should be based on money withdrawn from husband's BW capital account. But Wriedt did state: "Withdrawals from the partnership capital account are not taxable income."

Concerning vertical integration, the court heard testimony from the same two expert witnesses, and from husband.

Husband testified about his postseparation actions to expand and vertically integrate BW. Explaining the need for these actions, husband said "we had to change the way we did business because the retail side was looking to cut out the middle man . . . to lower their costs. . . . So we have had to change and accept the fact that the buying broker entity is no longer a viable business plan." Explaining the nature of the change, husband testified that the company expanded in two directions, transforming from a middleman to include both distribution and growing operations. BW thus expanded by getting "into the warehouse side, which is a distribution arm," and by getting into the berry-growing business. The warehouse was an east coast facility operated by Blazer-Wilkinson-Salins, with BW in partnership with a third person; it had been profitable. The berry-growing operation, Camarillo Berry Farms, had not yet been profitable. Husband testified that he was willing to use his BW

capital account to continue with the "Camarillo investment" since "the only way" to "keep Blazer-Wilkinson in existence, is to maintain some type of ground up relationships."

Husband's expert witness, Wilkolaski, testified about husband's investments in Blazer-Wilkinson-Salins and in Camarillo Berry Farms, based on information gleaned from husband's tax returns. Both businesses were started in 2003. For Camarillo Berry Farms, husband contributed capital totaling about $342,000 in 2003 and about $1,086,000 in 2004. Those sums, which came to husband from BW cash flow, were "monies that were disposable to him to invest" in Camarillo Berry Farms.

Wife's expert, Wriedt, testified that BW generated cash flow for 2002, 2003, and 2004 in the millions of dollars. Wriedt stated that it was husband's choice to "spend the money on his vertical integration."

On appeal, wife argues that by excluding "income that was used by [husband] to diversify into other areas of his business to establish a more vertically integrated business," the court "failed to use the total of [husband's] income in setting support which is an abuse of . . . discretion." Wife challenges only the nature of these expenditures, not the amount.

### 2. *Legal Authority*

■ Under the spousal support statute that governs here, the trial court is required to assess the "ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living." (§ 4320, subd. (c).)

The spousal support statute does not define income. "There are no statutes that address the computation of income for the purpose of determining spousal support." (2 Kirkland et al., Cal. Family Law: Practice and Procedure (2009) Spousal Support Orders, § 51.33, p. 51-31.)

This is in contrast to the statutory provisions governing child support.[2] As one commentator notes, "there is not yet any authority" applying the child support definition to spousal support. (Kirkland et al., Cal. Family Law: Practice and Procedure, *supra*, § 51.33, p. 51-31.) Despite that dearth of authority, and without discussing the point, the parties offer argument based

---

[2] The child support statute defines income broadly. (§ 4058; *In re Marriage of Cheriton, supra*, 92 Cal.App.4th at pp. 285–286.) With stated exceptions, the statutory definition covers "income from whatever source derived," including: "Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business." (§ 4058, subd. (a)(2).)

on section 4058, which defines income for child support purposes. As a general proposition, we question how well child support concepts translate to spousal support.[3] Nevertheless, to the extent that the child support provision defining income may have some relevance to the issue before us, we address it below.

So far as we are aware, there is no case law directly addressing the question before us here. While acknowledging that there are no reported cases "analogous" to the situation presented here, wife nevertheless cites two appellate decisions in support of her argument. The first case proffered by wife is *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 [272 Cal.Rptr. 560]. In that case, the husband was required to pay spousal support based on a percentage of future bonuses. (*Id.* at pp. 41–42; see also, e.g., *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387 [82 Cal.Rptr.3d 497] ["any bonus actually received must be counted as part of [obligor's] annual gross income for the purposes of spousal and child support"].) The second case cited by wife is *In re Marriage of Kerr, supra,* 77 Cal.App.4th 87. There, the husband was required to pay spousal support based on income that could include a percentage of future stock options. (*Id.* at p. 95 [on remand, "a percentage support award based on [the husband's] exercised option income would be permissible as long as the court sets a maximum amount proportionate to its findings of the marital standard of living"].) But as husband correctly observes, in both cases, the supporting spouse was an employee, not a business owner. (*In re Marriage of Ostler &*

---

[3] Child support and spousal support serve different purposes, implicate different policies, and are governed by different rules. (Compare § 4053, subd. (e) [concerning child support, the legislative policy is to treat "the interests of children as the state's top priority"] with § 4320, subd. (*l*) [concerning spousal support, the legislative policy is for the supported spouse to become "self-supporting within a reasonable period of time"]; compare § 4052 [for child support, "court shall adhere to the statewide uniform guideline"] with § 4320, subd. (n) [for spousal support, court shall consider enumerated circumstances including "other factors the court determines are just and equitable"]; see also, e.g., *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 49 [99 Cal.Rptr.2d 278, 5 P.3d 839] [public policy prohibits waiver of child support but not spousal support]; *In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 130, fn. 7 [123 Cal.Rptr.2d 611] [same]; *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 308 [when imputing income to the payee spouse, child support order must "consider the children's best interests" but no such requirement applies to spousal support order]; *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 95–96 [91 Cal.Rptr.2d 374] ["child support awards must reflect a minor child's right to be maintained in a lifestyle and condition consonant with his or her parents' position in society after dissolution of the marriage" while spousal support orders require "consideration of the parties' standard of living during marriage" only]; *In re Marriage of Schulze, supra,* 60 Cal.App.4th at pp. 528, 527 [guideline child support is highly regulated and "relatively fixed" whereas permanent spousal support orders must be "the product of a truly independent exercise of judicial discretion"]; but see Kirkland et al., Cal. Family Law: Practice and Procedure, *supra,* § 51.33, p. 51-31 [considering it "reasonable that the same rules" defining income for child support purposes "would apply to spousal support"].)

*Smith, supra,* 223 Cal.App.3d at p. 37; *In re Marriage of Kerr, supra,* 77 Cal.App.4th at p. 91.) We agree with husband that the two cases proffered by wife are inapposite.

The question before us thus is one of first impression.

3. *Analysis*

Applying the governing statute to the case at hand, our analysis turns on the trial court's assessment of "the ability of the supporting party to pay spousal support, taking into account the supporting party's . . . income . . . ." (§ 4320, subd. (c).) As explained above, we affirm the trial court's decision if it is supported in fact and law. (*In re Marriage of Duncan, supra,* 90 Cal.App.4th at p. 625.)

a. *The court's determination is supported by substantial evidence.*

As pertinent to wife's appellate claim, the trial court determined that there was a "need to diversify the company's work" and that funds spent for that purpose were "reasonable expenses" properly chargeable to the business, not to husband.

The court's factual finding is supported by substantial testimonial evidence.[4] Husband testified that unless the company diversified, BW "will not exist, it will be gone." The testimony of husband's expert supported the need for diversification, given the changing business environment and the risk inherent in BW's dependence on two major clients.

Since the court's determination on this point enjoys substantial evidentiary support, there is no abuse of discretion. (*In re Marriage of Ackerman, supra,* 146 Cal.App.4th at p. 197.)

b. *The court's determination is legally proper.*

The trial court's determination also comports with applicable law.

■ Under the spousal support statute that governs here, it was within the court's discretion to calculate husband's income without regard to funds derived from BW that were used to diversify the business. ■ The court

---

[4] The evidence cited by husband concerning "the reasonable business expenditures of BW" includes a number of trial exhibits. But no exhibits were transmitted to this court. (See Cal. Rules of Court, rule 8.224.) For that reason, the trial exhibits are not part of the appellate record, and we do not consider them here. (*Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 55, fn. 2 [72 Cal.Rptr.3d 354].)

must consider the "earned and unearned income" and the "assets" of the supporting *party*. (§ 4320, subd. (c).) Here, the trial court acted within its discretion in attributing the reinvested funds to the business instead of husband. The court may "look past the apparent form of ownership in which husband's assets were held to determine the extent of husband's true interest in them and the availability of those assets in assessing husband's ability to pay." (*In re Marriage of Dick, supra*, 15 Cal.App.4th at p. 162; cf. *In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 438, 440 [119 Cal.Rptr. 590] [in property division, court could disregard corporate entity when divorcing parties had "not treated the corporation as a separate entity"].)

■ More broadly, in the face of an ambiguity as to whether disputed sums represent income available for support, that determination is committed to the court's discretion. For example, "the trial court possesses broad discretion to determine whether to consider as income available for spousal support purposes contributions made by a participant to his or her retirement plan, as well as accruals or accrued earnings of that plan which are not withdrawn." (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 13 [17 Cal.Rptr.2d 480].)

To the extent that the child support statute may offer guidance, it likewise sustains the trial court's decision here. That statute excludes from income "expenditures required for the operation of the business." (§ 4058, subd. (a)(2); but see *Afsaw v. Woldberhan* (2007) 147 Cal.App.4th 1407, 1425–1426 [55 Cal.Rptr.3d 323] [based on statutory interpretation, child support obligor could not deduct rental property depreciation from income]; *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 36 [33 Cal.Rptr.3d 246] [trial court did not err in using child support obligor's "gross rental income without deducting expenses" where ruling was "occasioned by [obligor's] perjury"]; *In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 109 [8 Cal.Rptr.3d 699] [trial court properly rejected business owner's "structuring of income and expenses" as "an attempt to minimize child support obligations"].)

Under the circumstances presented here, the court "exercised its discretion along legal lines" in making the challenged determination. (*In re Marriage of Duncan, supra*, 90 Cal.App.4th at p. 625.) We therefore reject wife's claim concerning husband's income.

C.  *Imputation of Investment Income to Wife**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1438.

III. *Husband's Cross-appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The March 2007 order is affirmed. The parties shall bear their own costs.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.

---

*See footnote, *ante*, page 1438.