Filed 2/10/14  Laughman v. Laughman CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EILEEN LAUGHMAN,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>RICHARD K. LAUGHMAN,<br><br>        Defendant and Respondent. | B245837<br><br>(Los Angeles County<br>Super. Ct. No. BD497590) |

APPEAL from orders of the Superior Court of Los Angeles County. Frederick Shaller, Judge.  Affirmed.

Law Office of Anthony D. Zinnanti and Anthony D. Zinnanti for Plaintiff and Appellant.

The Reape – Rickett Law Firm and James Reape for Defendant and Respondent.

_____

Eileen K. Laughman appeals from two family law court orders: (1) declining to supplement her spousal support by giving her an interest in profit-sharing stocks owned by her former husband; and (2) denying her request to have her former husband pay more than $200,000 toward her legal fees, awarding her $25,000 instead. We affirm the first order because the stock shares were not transferrable and had no monetary value. We affirm the second order because the trial court's fee award was not an abuse of discretion.

## FACTS AND PROCEDURAL HISTORY

Richard Keith Laughman and Eileen K. Laughman married in 1973, separated sometime between August and December 2008, and separately filed for divorce in December 2008. A stipulated judgment was entered in November 2011, awarding Eileen monthly spousal support of $11,500. That amount could be supplemented by up to an additional $11,250 per month, to be derived from 25 percent of any additional forms of compensation Richard might receive, including bonuses, commissions, exercised stock options, and publicly traded stock.

After the parties separated, Richard became the CEO of Med Fusion, a medical laboratory testing facility in the Dallas-Forth Worth area that had recently organized as a Texas limited liability company. Med Fusion issued several classes of membership interests, akin to shares of stock, including the one at issue here: so-called "I" shares that were awarded as a form of incentive compensation to certain key personnel. I-share holders could receive distributions from company profits, but no formula for doing so was provided and any such distributions were entirely discretionary, as determined by Med Fusion's board of managers.[1] Richard was to receive 82 I-shares, 20.5 at a time annually for four years.

---

[1] Under Texas law, limited liability companies such as Med Fusion are governed by either a board of managers or by the company's members. (Tex. Bus. Org. Code, § 101.251.) This arrangement strikes us as akin to corporations, which are operated by a board of directors.

2

It is undisputed that Richard earned and would receive those shares after he and Eileen separated. An independent analysis of the I-share program found that Med Fusion was a start-up business that had generated minimal revenue, and predicted there would likely be no distributions to I-share holders for the foreseeable future. Med Fusion was also a closely held organization, meaning there was no public market for any of its shares. A June 2011 report from a certified public accounting firm noted that Med Fusion had a net loss of more than $14 million in 2010, raising "substantial doubt about the Company's ability to continue as a going concern." Eileen produced no evidence that the I-shares had any monetary value.[2]

The trial court's additional compensation order retained jurisdiction "regarding application of an Ostler-Smith[3] percentage support order to [Richard's] non-cash benefits, any form of additional compensation which cannot be readily valued such as the 'I' units, or profit participation units held in Med Fusion." Eileen then filed a motion asking the court to award her as spousal support a 25 percent interest in kind in the I-shares Richard was scheduled to receive from his employer.

Eileen contended that the I-shares qualified as a form of non-cash compensation as to which the trial court reserved jurisdiction under the terms of the stipulated judgment. She claimed that Richard had breached his fiduciary duties to her because: (1) when he

---

[2] The independent analysis of Med Fusion's various classes of shares assigned the I-shares a value of $4,169.31. As we read the analysis, the figure is largely hypothetical because Med Fusion was a start-up company that had generated little revenue, distributions to I-share holders were deemed unlikely for some time, and the shares in this closely-held company were virtually unmarketable. In any event, Eileen never raised the issue either below or on appeal, and has effectively conceded that the I-shares did not yet have a monetary value.

We also note that the parties' evidentiary submissions were somewhat lacking. There are no witness declarations from either the parties or anyone else to support their contentions. Documents submitted with their trial court points and authorities were not authenticated or given a proper foundation by way of supporting declarations. Neither party objected to this procedure, however, so we treat the various documents submitted to the trial court as properly admitted evidence.

[3] *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler-Smith*).

3

signed the I-shares agreement with Med Fusion, he checked "not applicable" on the form where it asked for spousal consent; and (2) as the CEO of Med Fusion, he somehow designed and controlled the I-share program in a manner that would defeat her right to receive her 25 percent share of any distributions by making it appear that the I-shares had no current value. She therefore contended that instead of waiting to see whether Richard ever received any cash distributions from his I-shares in order to trigger his additional spousal support obligations, she should receive a 25 percent interest in the I-shares themselves in order to prevent him from manipulating the timing of any distributions in a manner that would allow him to escape those obligations.

Richard contended that the I-shares were his separate property because he received them after he and Eileen separated, and because the stipulated judgment said so. As such, he contended, the court could not award Eileen any type of ownership interest in those shares. Furthermore, the Med Fusion I-shares agreement prohibited any transfers of the shares, stating that any attempt to do so would void an employee's rights under the I-share program. In any event, because Med Fusion was a start-up business it had generated no profits to distribute under the I-share program, and it was entirely speculative whether that would ever occur. As to Eileen's breach of fiduciary duty claim, Richard contended that the I-share program was administered and approved by Med Fusion's board of managers, not by himself. Finally, he argued that when he signed the company's I-share agreement and wrote that spousal consent to the terms was "not applicable," he did so because the shares were to be his separate property as to which Eileen would have no interest.

The trial court found that the shares had no discernible value and that because they were Richard's separate property he owed Eileen no fiduciary duty in regard to those shares. The court declined to transfer to Eileen any interest in the shares themselves for two reasons. First, the court lacked jurisdiction to convey one spouse's separate property to another, making such an order "improper, in part, because it requires Richard to transfer his separate property interest to Eileen." Second, even though stock shares might be transferred under *Ostler-Smith, supra,* for purposes of paying spousal support, that

4

was not possible in this case because the I-shares could not be transferred without making them void. Because the shares had no discernible value, the court did not award Eileen any interest in the shares themselves, but did order Richard to pay Eileen 25 percent of any I-share distributions he received in the future.

A few months later the parties submitted motions on the reserved issue of attorney's fees.[4] Eileen contended that by the time the fees motion and other matters were resolved that she would have incurred attorney's fees of more than $335,000. Except for $25,000 in fees that Richard had been ordered to pay early on during the litigation, Eileen had paid her legal fees out of her own funds, including her $130,000 share of the community property distribution. She asked the court to order Richard to pay $210,000 toward her fees based on the disparity between their respective abilities to cover those costs.

The trial court found that although both parties incurred substantial attorney's fees and costs, there was insufficient evidence that the fees incurred were unnecessary, unreasonable, or wasteful. The court found that Richard had approximately $235,000 more in liquid assets than did Eileen, and that Eileen had total assets of approximately $866,000 while Richard's assets totaled nearly $1.2 million. Even though Eileen claimed to have used the entire sum of $130,000 she received as part of the community property assets distribution to pay her legal fees, the trial court noted that she held nearly $285,000 in stocks, bonds, and notes, along with more than $540,000 in retirement funds. Although Eileen's use of community property funds resulted in an initial period of relative financial inequality, the parties ended up with a nearly equal division of property.

Even so, the court found a disparity between the parties that warranted an additional $25,000 award to Eileen. As part of its order, the trial court noted that Eileen had "access to and used" Richard's separate property funds to pay her own expenses until a support order was fashioned, albeit in an unspecified amount. The trial court also noted

---

[4]     Each sought sanctions against the other under Family Code section 271. The court denied both sanctions requests and that ruling is not challenged on appeal. All further undesignated section references are to the Family Code.

that Eileen had not "sufficiently curbed her expenses to lower her lifestyle to be able to live within incomes she receives from spousal support."

## DISCUSSION

1. *The Trial Court Did Not Err By Declining to Transfer I-Shares to Eileen*

When awarding spousal support, the trial court must consider several factors, including the supporting party's ability to pay based on his earning capacity, earned and unearned income, assets, and standard of living, even if those assets are separate property. (§ 4320, subds. (c), (e).) We review spousal support orders under the deferential abuse of discretion standard. (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.) We will affirm a spousal support order so long as the trial court exercised its discretion along legal lines and the order is supported by substantial evidence. (*Ibid.*)

The court in *Ostler-Smith, supra,* 223 Cal.App.3d 33, affirmed a trial court order that escalated the amount of spousal support over the former wife's needs by a percentage of large annual bonuses that her former husband received each year. (*Id.* at pp. 48-51.) The *Ostler-Smith* rule has since been routinely applied to future sources of income when determining a supporting party's spousal support obligations.

Because the I-shares had not yet generated any income, the trial court in this case applied *Ostler-Smith* to any future profit distributions Richard might receive from his Med Fusion I-shares. Eileen contends the court erred by not awarding her a 25 percent ownership interest in those shares instead because they qualified as non-cash compensation under the stipulated judgment. She relies solely on *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 (*Cheriton*) to support this proposition. The *Cheriton* court held that the significant monetary value of the former husband's stock options could be used to determine his earning capacity in order to set the amount of both child and spousal support. (*Id.* at pp. 289-292, 305.) It did not hold that those stock options or any interest in them could be transferred for those purposes, however, and it is therefore

6

inapplicable. Absent the agreement of the parties, the trial court lacks jurisdiction over a spouse's separate property. (§ 771; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 810.)

Even if the trial court had the power to order a transfer of Richard's separate property, however, Eileen has never disputed that the I-shares would become void if transferred and has never explained why the trial court should have ordered a transfer that would wipe out an asset that might one day generate income for both her and Richard.[5] In short, neither logic nor the law justifies Eileen's request to transfer I-shares to her.

As we see it, Eileen's true complaint is that Richard breached his fiduciary duty to her by initially concealing the I-shares and by controlling the terms of the I-share program in order to prevent their use in determining spousal support. She contends the trial court erred by concluding that Richard owed her no fiduciary duty in regard to his separate property interest in the I-shares. Assuming for argument's sake that she is correct, we agree with Richard that she offered no evidence to support this contention.

Eileen relies on two pieces of evidence: (1) Richard's use of "not applicable" on the signature line of Med Fusion's spousal consent form for the I-share program; and (2) the fact that he signed his I-shares agreement for the company in addition to signing it on his own behalf.

As to the spousal consent form, she contends that by writing "not applicable" where a spouse was supposed to sign, Richard was attempting to hide the program from her. However, the only evidence on this point is the form itself. It states that the employee's spouse who signs the form agrees that any interest he or she may have in the company is subject to the terms of the I-share plan and agreement. It also states that the

---

**5** The I-share plan stated that Med Fusion's board of managers had the sole discretion to approve a transfer of the shares but the record does not show that Eileen ever asked Richard to seek such approval or that she otherwise raised the issue with the trial court. Eileen raised the issue for the first time at oral argument. However, her appellate briefs confirmed the non-transferability of the I-shares several times. (See Appellant's Opening Brief, pp. 8, 16, &24, and Reply Brief, p.4.) We therefore deem the issue waived.

purpose of the form was to "bind" any "community property interest" in Med Fusion that the signing spouse might have. The form was signed in 2010, well after the parties had separated, meaning that Eileen had no community property interest in the shares. It was also signed well before the 2011 stipulated judgment that reserved characterization and treatment of the I-shares for spousal support purposes. Nothing about the contents of the form or the timing and circumstances surrounding its execution gives rise to an inference that Richard failed to obtain Eileen's signature in order to hide from her an interest in an asset of speculative and doubtful value.

Although Eileen contends that Richard bore the burden of producing evidence that he acted in compliance with any fiduciary duty, we believe he did so. The evidence shows that Med Fusion was a Texas limited liability company operated by a board of managers in much the same way as a corporation functions. The I-shares program governing documents state that the program was designed to create incentives for various key personnel and would be administered by the board of managers. Much like a corporation, such a business entity operates through its officers and its board of managers. The fact that Richard signed the agreement for the company as its CEO and individually as the employee designated to receive I-shares does not, standing alone, suggest any impropriety. In short, Eileen's assertions notwithstanding, no evidence in the record suggests that Richard somehow concocted and concealed the I-shares program as a means of dodging his spousal support obligations or for any other improper purpose.

Finally, even if Richard had breached a fiduciary duty to Eileen, she suffered no harm. She learned of the I-shares in sufficient time to have the trial court consider their characterization for spousal support purposes and, because they are not transferrable and have no current monetary value, she received the only possible form of relief: the right to 25 percent of any future distributions.

2.    *The Attorney's Fee Order Was Not An Abuse of Discretion*

Eileen contends the trial court erred by awarding her $25,000 toward her attorney's fees of more than $335,000 instead of the $210,000 she requested. We review

8

the trial court's order under the broad abuse of discretion standard. (*Cheriton, supra,* 92 Cal.App.4th at p. 314.) Eileen contends the trial court abused its discretion because the court made its order even after finding that she used $130,000 of community property assets to pay her fees and that Richard had approximately $330,000 more assets and $235,000 in liquid assets than she did.

However, the trial court also noted that Eileen had access to Richard's separate property funds to cover her expenses until a support order was entered and that she had failed to cut back her expenses. When viewed in light of the fact that the trial court had previously awarded Eileen $25,000 to cover her legal fees, we cannot say that the trial court's order was an abuse of discretion.

## DISPOSITION

The spousal support and attorney's fees orders are affirmed. Respondent shall recover his appellate costs.

RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.

9