Filed 10/15/20 Marriage of Dibelka CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re the Marriage of SANDRA and JAMES DIBELKA. | B296485 |
| SANDRA DIBELKA, | (Los Angeles County Super. Ct. No. VD092166) |
| Appellant, | |
| v. | |
| JAMES DIBELKA, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, James E. Horan, Judge. Reversed and remanded.

Law Offices of Dorie A. Rogers and Dorie A. Rogers for Appellant.

James Dibelka, in pro. per., for Respondent.

_____

Petitioner and appellant Sandra Dibelka appeals from the portion of a dissolution judgment awarding permanent spousal support to respondent James Dibelka.[1]  On appeal, Sandra contends:  (1) the family law court did not properly consider evidence of domestic violence to reduce or preclude an award of spousal support under Family Code section 4320, subdivision (i); and (2) the family law court was not authorized under Family Code section 4333, subdivision (a),[2] to award permanent spousal support retroactive to the filing date of the response to the petition for dissolution.  We hold that the family law court is not precluded from awarding permanent spousal support based on evidence of domestic violence under section 4320, subdivision (i).  Under section 4333, however, the family law court was not authorized to award permanent spousal support retroactive to the date of filing of the response to the dissolution petition.  We must reverse and remand the portion of the judgment awarding spousal support.

---

[1] Because the parties share the same last name, they will be referred to individually by their first names for ease of reference.  No disrespect is intended.

[2] All further statutory references are to the Family Code unless otherwise indicated.

2

## FACTS AND PROCEDURAL BACKGROUND

Sandra and James married on January 15, 1977. They have two adult children and owned a home in Whittier during their marriage. James is retired and receives social security disability. In May 2017, Sandra and her adult daughter moved to Oregon in order to care for Sandra's elderly mother and avoid any negative response by James when Sandra filed for divorce. Sandra and James separated as of May 15, 2017.

On May 23, 2017, Sandra filed a petition for dissolution of marriage. In October 2017, Sandra filed a notice stating that she intended to seek reimbursement pursuant to *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, based on James's use of the family residence. On November 2, 2017, Sandra requested a domestic violence restraining order for herself, her adult daughter, and her elderly mother.

Sandra alleged the following incidents to support her request for a restraining order. James was prone to rages and unpredictable behavior during the marriage. He was physically, emotionally, and verbally abusive. He drank heavily, and she had to be careful not to trigger an outburst. He lied, then made her think her memory was not correct. He kept her isolated, because he did not like people to come over to the house. She slept and ate in a separate room to avoid him. She put a door stop under her bedroom door at night, but at times, James would come into the room in the

middle of the night, turn on all the lights, slam drawers, and make frightening comments.

She described an incident in 2000 when James threw a box of CDs that hit her head and then he hit her on the side of the head. Sandra called 911, the police took pictures of her bruises, and she stayed in a hotel while James was detained overnight at the police station. In 2008, James yelled at a hotel reservation clerk and the hotel manager required them to leave the hotel after the first night, which was humiliating. Sandra left their home a few times during the marriage, but returned when James promised to change. James was less physically abusive later in their marriage.

After he agreed to separate and sell their home, he vacillated and threatened not to leave. He often stated that he was in control and would stay in the house as long as he wanted. On April 29, 2018, James called 911 and accused his adult daughter of elder abuse. After the police left, Sandra and her daughter locked themselves in the daughter's room to pack boxes to move out. When James heard the tape gun, he bellowed, "What are you doing?" Sandra did not answer. James walked to the door and jostled it, then yelled, "What are you doing? I am going to break down this door!" He eventually left, but Sandra was shaken and panicked, concerned that he would come back and break down the door. Sandra and her daughter left to stay with Sandra's mother in Oregon.

On the morning of October 28, 2017, James called Sandra in Oregon and she did not answer the telephone.

James drove to Oregon and parked outside her mother's house. He rang the doorbell to the house several times. When no one responded, he returned to sit in his car in front of the house. Sandra called the police and filed a report of trespassing against James. The police advised her to obtain a restraining order. Sandra described incidents between James and his children as well.

The family law court granted a temporary restraining order as to Sandra, but denied the request as to the other adults. On November 14, 2017, James filed a response to the dissolution petition. He requested spousal support be paid to him, as well as termination of the court's ability to award spousal support to Sandra. He asked for an award of attorney fees as well.

In January 2018, James's attorney requested to be relieved as counsel of record as a result of a breakdown in communication and in the attorney-client relationship. James proceeded in pro per.

On January 26, 2018, Sandra filed a memorandum of points and authorities in support of the request for a domestic violence restraining order as to all three women listed in the original request. The temporary restraining order was amended to include all three women. James obtained new counsel. On April 16, 2018, James stipulated to a restraining order protecting Sandra, as well as their adult daughter and Sandra's mother, for five years.

On June 11, 2018, James filed a settlement conference brief. He stated that he was retired and had serious health

5

conditions that prevented him from working. He requested spousal support, payment of his attorney fees, and equal division of property, but also the right to purchase Sandra's interest in their home. He asserted that *Watts* credits were entirely offset by *Epstein* credits under *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84–85. Sandra also filed a settlement conference brief. She sought to have the home sold and the proceeds divided, as well as the fair rental value for use of the residence and reimbursement for payments made on community debt.

James's second attorney substituted out of the case and James proceeded in pro per. On July 3, 2018, Sandra filed a trial brief based on the same positions as her settlement brief.

Sandra, her attorney, and James were present for trial beginning on July 9, 2018. James requested a continuance; he represented that he was attempting to refinance the house through the Veteran's Administration. Appraiser Neal Johnson testified that the fair market value of the property was $805,000. The fair market rental value in 2017 was $3,200 per month, which increased in 2018 to $3,300 per month. James represented that he had obtained an appraisal of the property for $800,000. The parties owed approximately $125,000 on the property. Sandra's attorney agreed with the family law court that the best outcome would be if James refinanced the property and paid $338,750 to Sandra, because Sandra would avoid any reduction from the cost of sale and similar items. But Sandra's attorney

argued that there were not sufficient resources in the estate for James to purchase Sandra's interest.

The court found the house was worth $802,500. The family law court ran calculations and inquired about the resources available. James represented that he needed 90 days to complete refinancing through the Veteran's Administration. The trial court allowed James 60 days, until September 30, 2018, to obtain the financing necessary to pay Sandra or move out of the home. If James could not refinance the property, Sandra would receive exclusive use of the property on October 1, 2018, to prepare it for sale. If James provided proof of qualification and refinance to Sandra's attorney prior to October 1, 2018, then Sandra would not take possession on October 1, 2018. The next court date was scheduled for November 5, 2018. The family law court warned repeatedly that the house would be ordered sold if James had not obtained financing or could not show that financing was imminent. The trial court also ordered the parties to exchange lists of the 10 large household items that each party wanted to keep.

On September 21, 2018, James filed an ex parte motion seeking an extension of time for refinancing and to compel Sandra to disclose community assets. He filed a declaration in which he explained, among other circumstances, that he did not have the physical or mental strength to vacate the house by September 30, 2018, as required under the court order if he was unable to obtain financing. The court found no exigent circumstances and denied the ex parte request.

On October 10, 2018, Sandra filed notice of her intent to seek sanctions.  Sandra had incurred attorney fees and costs to make nine attempts to serve James documents in the past, because he evaded service, and to obtain the restraining order.  He refused to vacate the home, in violation of the court's order.  As a result of his conduct, Sandra had already incurred attorney fees for a simple dissolution matter with no minor children of more than $41,000.

That same day, Sandra filed a request for ex parte orders to have James vacate the house by October 12, 2018, and for Sandra to list the home for sale.  At a hearing on the ex parte request on October 10, 2018, Sandra was not present, but her attorney and James appeared.  James stated his understanding was that he was supposed to be out of the home by November 1, 2018, or secure a loan.  Sandra's attorney stated that she had spoken with the loan officer the day before.  The loan officer apparently asked James for specific information which James did not request from Sandra's attorney.  As far as Sandra's attorney was concerned, it was already past the time that the court had given James to handle the matter, and James had failed to take the steps necessary to secure a loan.  The court granted the ex parte request, but warned that the court would change its order if James had attempted to get a loan and would have been able to get a loan, but had been undermined through Sandra's negligent or intentional lack of cooperation.  The court also noted that James had been

8

given multiple chances, but the court could not help him when he did not abide by the court's orders. The court stated that the evidence suggested James was stalling and would not obey court orders.

On October 17, 2018, James substituted in new counsel. On November 2, 2018, James filed a trial brief. He requested to be allowed a final attempt to refinance, as it would benefit both parties. He asked that no *Watts* charges be assessed and described the property to be divided. He requested spousal support of not less than $1,600 to $1,800 per month, in light of the duration of the parties' marriage of approximately 40 years. He also sought an award of attorney fees. He noted that Sandra is in good health, while he is disabled, retired, and unable to work.

He attached a letter from his attorney to Sandra's attorney explaining that the refinance would proceed more quickly if the parties were divorced, or if Sandra would provide her social security number to allow a credit check to view her outstanding debts, which she had to date refused to do.

A further day of trial was held on November 5, 2018. Sandra, James, and attorneys for both parties were present. After a discussion in chambers that was not reported, trial was bifurcated as to status. The parties stipulated that the date of separation was May 15, 2017. The family law court granted judgment of dissolution as to status only, with Sandra's agreement to maintain health insurance for James until the house was bought by James or sold to a third party.

9

The parties agreed to submit reserved issues on written briefs with supporting documentation. James requested an additional 60 days to complete refinancing of the home. The court took his motion for reconsideration of the sale order under consideration.

James and Sandra each filed trial briefs addressing the remaining issues, including *Watts* credits, division of property, spousal support, and attorney fees. James continued to request support in the range of $1,600 to $1,800 per month. The parties' briefs did not address the starting date for payment of spousal support.

In early December, the trial court provided an unsigned statement of decision. The court denied James's request to reconsider the orders of July 9, 2018, and found James failed to timely refinance the family residence. The existing orders regarding the sale of the home remained in effect, but James was free to purchase the home by offering to buy it at a price greater than the next "best offer." The court divided the remaining property.

The court ordered spousal support of $1,000 per month payable from Sandra to James. The court stated, "Although the court is aware that pendent[e] lite orders could have been ordered effective November 15, 2017 at $1500 a month, the court awards arrears at the amount of $1000 a month or $12000 (December 2017 through November 2018). The ongoing 'permanent' spousal award of $1000 per month shall be reduced to $500 a month if the parties are willing/able to

work together to find a way to allow Respondent to refinance the family home.

"This award is based [on] the court's weighing of the following factors pursuant to Family Code section 4320: [¶] Petitioner's income is approximately $7700 per month. [¶] Respondent's income is approximately $2500 per month. [¶] The court finds that the parties lived a middle class lifestyle. They owned their own home, had reasonable vehicles, little to no evidence was put forward as to vacations and/or saved assets. [¶] The earning capacity of Respondent is insufficient to maintain the standard of living established during the marriage. The earning capacity of Petitioner is minimally sufficient. [¶] There was no evidence of impairment of earning capacity of either party during the years the parties were married to care for minor children. [¶] There was no evidence of one spouse contributing to the attainment of another position by the other party. [¶] Petitioner is 63 years old and still working and is self-supporting. Respondent is 67, in questionable health, collecting social security and can access his retirement accounts without penalty. This was a marriage of long duration, over 40 years. [¶] The court has considered the obligations and assets of each party, and relies heavily on the notion that both sides will be receiving significant assets, which reduces the need for support. [¶] The court finds Respondent has stipulated to a five year domestic violence protective order based on Petitioner's allegations of recent verbal and emotional abuse.

11

"The court is aware that had the matter proceeded in a more orderly fashion, Respondent likely would have been eligible for guideline support in the amount of $1000 to $1500 a month. This amount may have been enough to allow Respondent to refinance and thereby remain in the family home at a 'discounted' mortgage amount. Both parties would have been favorably impacted by the lower mortgage rate and the court could not better find that Respondent is able to minimally emerge from this dissolution at the marital standard of living. Both litigants should keep this in mind despite the court's ruling (above) that Petitioner remains free to market and sell the community home."

The court declined to award attorney fees or sanctions. The court found both litigants engaged in behavior that frustrated settlement: "Petitioner for example, immediately asked to terminate spousal support, on a 40 year marriage, while almost simultaneously estimating Respondent's income at $110 a month. She left the family home citing domestic violence but also admits she wished to go to Oregon to care for her ailing mother. . . . She cites Respondent's mental condition, which appears to be well documented and severe, in alleging domestic violence via mental/emotional abuse, but dismisses any suggestion that Respondent may be [ ] less than an ideal litigant in regards to execution/understanding of relatively complicated refinance and/or ATROS obligations. [¶] Respondent, for his part, appears aggressive, and inflexible. He has failed to comply

12

with court orders regarding the refinancing of the house, and failed to move out as ordered by the court causing additional litigation. Had he focused on the case in a more formal, less adversarial manner, he may have been able to save his house and reduce the cost of litigation for all."

On December 24, 2018, both attorneys appeared without their clients at a hearing for Sandra to obtain an order to have an elisor sign the listing agreement for the home, because James refused to cooperate with the sale. The family law court noted that through incentives, the court had strongly invited Sandra to find alternatives to sale, but she wanted to proceed and sell the house. The court ordered the court clerk to sign the paperwork and the court set a hearing for sanctions. The court noted James should strongly consider signing the paperwork, because although the court had deep sympathy for him, the goodwill and equity used to craft a decision that treated James as fairly as possible without being unfair to Sandra was fast disappearing.

The trial court issued its statement of decision on December 26, 2018. On December 27, 2018, James's attorney filed a motion to be relieved as counsel based on a breakdown in attorney/client communications. On December 28, 2018, the family law court entered a judgment of dissolution as to status and ordering spousal support. On January 8, 2019, James filed a substitution of counsel and proceeded in pro per.

Sandra filed objections to the statement of decision. She also filed a motion to vacate the judgment as to the order of permanent spousal support. James substituted in a new attorney in February 2019. He filed a responsive declaration to the motion to vacate. Sandra filed a reply.

A hearing was held on the objections and the motion to vacate on March 5, 2019. The court overruled the objections to the legal basis for the decision and findings on the issue of spousal support. Sandra argued that the spousal support order was contrary to the intent of the Legislature that victims of abuse should not have to pay support to their abusers under section 4320, subdivision (i). The court explained, "The legislative intent was to avoid victims being financially controlled. They're now starting to call this economic abuse. That is the opposite of what we have in our case. Petitioner significantly outearns Respondent. [¶] I did factor domestic violence into my decision. But, one, it's an overstatement of the law to say that, in cases where domestic violence has occurred, spousal support is preempted or not warranted. It is just one of many factors. [¶] In this case, I do not see any hint of economic abuse being perpetrated by Respondent against Petitioner. If I were to find economic abuse in this case, which I don't, it would be the other way. It would be Petitioner economically abusing the Respondent. [¶] I made a probably slightly lower award to Respondent from Petitioner because one of the factors included domestic violence. [¶] But under no circumstances is it legally justifiable to leave Respondent in

14

a position where I moved him out of his home, with a significantly favorable mortgage, reduced his standard of living almost down to poverty when you factor in the fact he has to pay for a place to live, when his income and his age and his health preclude any meaningful ability to get additional income, all leaving him at basically a minimum-wage-style existence, after a 40-year marriage, while Petitioner makes 7- or $8,000 a month, two or three times what he makes.  Certainly spousal support is both allowable and, under those facts, mandated.  [¶]  So that's the reason for the award, and I would note that I believe it was somewhat conservative.  [¶]  So that's overruled."

Sandra's objection to ordering retroactive permanent spousal support in the absence of a request for temporary support was overruled.  The court noted James filed his response no later than November 2017 and asked for an award of spousal support, so the court concluded that was the date of jurisdiction.  James was entitled to a ruling on spousal support, but because of the progress of the case, no ruling was made until the case was submitted in 2018.  The pendente lite range was between $1,000 and $1,500.  Rather than go back based on a higher pendente lite, the court used the lower figure of $1,000.  James should have received a ruling on support based in 2017 or early 2018, but did not.  As the court explained, "He was entitled to it.  He certainly should have had a hearing and been awarded that amount, maybe also attorney's fees.  It didn't happen.  [¶]  So whether you want to call it pendent[e] lite, retroactive, or permanent

15

spousal retroactive, which apparently case law says I cannot do, whatever the label you put on it, he was entitled to a ruling on the matter. He had requested a ruling on the matter. The court did not get to that issue for over a year, and I used the conservative amount. [¶] So I would overrule the objection." The court denied the motion to vacate the judgment.

On March 11, 2019, Sandra filed a notice of appeal from the judgment entered on December 28, 2018, and the denial of the motion to vacate.

## DISCUSSION

### Statutory Scheme and Standard of Review for Permanent Spousal Support

There are two distinct types of spousal support under California law, based on the timing and the purpose of the award. (*In re Marriage of Mendoza & Cuellar* (2017) 14 Cal.App.5th 939, 942 (*Mendoza*).) Temporary spousal support, also known as pendente lite support, allows the supported spouse to maintain the living conditions of the marriage and meet his or her litigation needs while the dissolution or legal separation action is pending. (*Id.* at pp. 942–943.) Permanent spousal support is awarded to provide financial assistance after dissolution as part of an equitable apportionment between the parties. (*Ibid.*) Temporary support and permanent support are governed by

16

different procedures.  (*Ibid*.)  James did not request temporary spousal support, so we address solely the law governing permanent spousal support.

"Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360. Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.' [Citations.]" (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442.)

"An award of spousal support is a determination to be made by the trial court in each case before it, based upon the facts and equities of that case, after weighing each of the circumstances and applicable statutory guidelines. [Citation.]  In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it.  'The issue of spousal support, including its purpose, is one which is truly personal to the parties.' [Citation.]" (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93 (*Kerr*).)

"In awarding spousal support, the court must consider the mandatory guidelines of section 4320." (*Kerr, supra*, 77 Cal.App.4th at p. 93, fn. omitted.)  "'[T]he court does not have discretion to ignore any relevant circumstance

17

enumerated in the statute.  To the contrary, the trial judge must both recognize and *apply* each applicable statutory factor in setting spousal support. . . .' [Citation.]" (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1559.) "Once the court does so, the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of that discretion.  [Citation.]  'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.' [Citation.]" (*Kerr, supra*, 77 Cal.App.4th at p. 93.)

"[W]e review spousal support orders under the deferential abuse of discretion standard.  [Citation.]  We examine the challenged order for legal and factual support. 'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.'  [Citations.]  'To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range justified by the evidence presented."'  [Citation.]" (*In re Marriage of Blazer, supra*, 176 Cal.App.4th at p. 1443; see also *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 110.)

"However, we conduct de novo review where a question of law is presented on undisputed facts." (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 514 (*Brewster*).)  When interpreting a statute, we begin with the words in the statute, applying their usual and ordinary

meaning and construing them in context.  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)  If the plain meaning of the statutory text is ambiguous, then we may turn to rules of construction or legislative history.  (*Ibid.*)

## Documented Evidence of Domestic Violence

Sandra contends that the family law court, in considering the factors for an award of spousal support under section 4320, failed to properly weigh her evidence of domestic violence to reduce or preclude an award of permanent spousal support.  We find no abuse of discretion has been shown.

The spousal support provisions of the Family Code reflect "a strong public policy against requiring a victim of domestic violence to provide support to an abusive spouse." (*Brewster*, *supra*, 45 Cal.App.5th at p. 502.)  Section 4320, subdivision (i), provided at the time that judgment was entered in this case for the family law court to consider: "Documented evidence, including a plea of nolo contendere, of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of

19

violence against the supporting party by the supported party." (Former Fam. Code, § 4320, subd. (i).)[3]

Documented evidence of a history of domestic violence is a factor that the family law court must consider under section 4320, subdivision (i), but the court is not required to reduce or eliminate an award of spousal support under subdivision (i). Had the Legislature intended to mandate that the family law court reduce or eliminate spousal support in every case where there was documented evidence of a history of domestic violence, it would have used language such as it has in other provisions of the dissolution

_____

[3] Effective January 1, 2019, the Legislature amended subdivision (i) of Family Code section 4320 to provide: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] . . . [¶] (i) All documented evidence of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of: [¶] (1) A plea of nolo contendere. [¶] (2) Emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party. [¶] (3) Any history of violence against the supporting party by the supported party. [¶] (4) Issuance of a protective order after a hearing pursuant to Section 6340. [¶] (5) A finding by a court during the pendency of a divorce, separation, or child custody proceeding, or other proceeding under Division 10 (commencing with Section 6200), that the spouse has committed domestic violence." (§ 4320, subd. (i), as amended by Stats. 2018, ch. 938, § 1.)

statutes.  By comparison, subdivision (m) of section 4320 expressly directs the family law court to consider a criminal conviction of an abusive spouse "in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325."  Section 4325, subdivision (a)(1), establishes a rebuttable presumption that an award of spousal support from the injured spouse to a spouse with a criminal conviction for a domestic violence misdemeanor entered within five years or during the course of the dissolution proceeding is prohibited.  (§ 4325, subd. (a)(1).)

Under the plain language of section 4320, documented evidence of a history of domestic violence is a factor that must be considered and weighed in the determination of spousal support.  The record reflects that the family law court considered and weighed the evidence of domestic violence in this case.  The court's discussion of the concept of economic abuse did not indicate that the court misunderstood or unreasonably limited the scope of the evidence of domestic violence to be considered under section 4320, subdivision (i).  There was no criminal conviction in this case that required the trial court to apply subdivision (m) of section 4320 or the rebuttable presumption against an award of spousal support under section 4325.  In denying the motion to vacate the judgment, the family law court specifically stated that the court had factored Sandra's evidence of domestic violence into the decision and reduced the award of spousal support to James based on the history of domestic violence.  We are not persuaded that the family

court misapplied a factor in the weighing process or abused its discretion.

**Retroactivity**

Sandra contends the family law court was not authorized under section 4333 to order spousal support retroactive to the date that James filed his response to the petition for dissolution. We agree.

Prior to 1985, former Civil Code section 4801, subdivision (a), allowed retroactive orders to modify spousal support, but was silent about the retroactivity of original support orders.[4] In 1985, the Legislature amended former Civil Code section 4801, subdivision (a), to extend

---

[4] Civil Code section 4801, subdivision (a), formerly provided in pertinent part: "In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable. . . . Any order for support of the other party may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke. At the request of either party, the order of modification or revocation shall include a statement of decision and may be made retroactive to the date of filing of the notice of motion or order to show cause to modify or revoke, or to any date subsequent thereto." (Former Civ. Code, § 4801, subd. (a), as enacted by Stats. 1984, ch. 1661, § 3 pp. 5980–5981.)

retroactivity to original orders of permanent spousal support as follows in pertinent part in italics: "Any order for support of the other party may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke. *Any order for spousal support may be made retroactive to the date of filing of the notice of motion or order to show cause therefor, or to any subsequent date.* At the request of either party, the order of modification or revocation shall include a statement of decision and may be made retroactive to the date of filing of the notice of motion or order to show cause *therefor*, or to any *subsequent date*." (Former Civ. Code, § 4801, subd. (a), as enacted by Stats. 1985, ch. 1358, § 3 pp. 4821–4822, italics added.)

At the same time, the Legislature made substantially similar amendments to former Civil Code section 4700, subdivision (a), to allow child support orders to be made retroactive.[5] The Legislative Counsel's digest for Senate Bill No. 476 (SB 476), which amended sections 4700 and 4801, noted that orders combining child and spousal support in

_____

[5] Civil Code section 4700, subdivision (a), formerly provided in pertinent part: "*Any order for child support,* as well as any order of modification of revocation of such an order, *may be made retroactive to the date of the filing of the notice of motion or order to show cause therefor,* or to any subsequent date . . . ." (Former Civ. Code, § 4700, subd. (a), as enacted by Stats. 1985, ch. 1358, § 1 p. 4820, italics added.)

one undivided amount are known as family support.  (Legis. Counsel's Dig., SB 476 (1985–1986 Reg. Sess.) at p. 1.)  SB 476 extended the existing law allowing modification orders to be made retroactive to the date of filing the notice or order to show cause to modify, to allow all orders for child or spousal support to be made retroactive as specified.  (*Ibid.*)

Whether the Legislature intended to allow original spousal support orders to be made retroactive to the date of the original complaint is not clear from the legislative history.  (See Sen. Com. On Judiciary, Analysis of Sen. Bill No. 476 (1985–1986 Reg. Sess.) as amended April 8, 1986, pp. 1–2 [stating SC 476 provides for retroactive support orders "from the date of filing the original support action," but also stating it grants authority for retroactive orders "to the date of filing the notice of motion or order to show cause"].)

In 1992, the Legislature repealed former Civil Code section 4801 and enacted Family Code section 4333 in its place.  (See Stats. 1992, ch. 162, § 3, p. 464 [repealing Civil Code]; Stats. 1992, ch. 162, § 10 [enacting Family Code section 4333].)  Section 4333 continues the fourth sentence of former Civil Code section 4801, subdivision (a) without substantive change, stating, "An order for spousal support in a proceeding for dissolution of marriage or for legal separation of the parties may be made retroactive to the date of filing the notice of motion or order to show cause, or to any subsequent date."  (§ 4333.)

24

In *County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 443–444 (*Perry*), the California Supreme Court examined the legislative intent behind SB 476 to allow retroactivity of original support orders. The *Perry* court noted the legislative analyses had blurred the distinction between filing a complaint and filing a motion. (*Id.* at p. 444.) Because it was not unreasonable or absurd to require filing a noticed motion or an order to show cause, the *Perry* court concluded that child support orders under former Civil Code section 4700, current Family Code section 4009, could be made retroactive only to the filing date of the notice of motion or order to show cause for support, not to the filing date of the original complaint. (*Perry*, *supra*, 18 Cal.4th at p. 446.) A year after the decision in *Perry*, the Legislature amended section 4009 to clarify that "[a]n original order for child support may be made retroactive to the date of filing the petition, complaint, or other initial pleading." (§ 4009, as amended by Stats. 1999, ch. 653, § 8.)

In *Mendoza*, *supra*, 14 Cal.App.5th at p. 941, the appellate court held that a permanent spousal support order could be made retroactive under section 4333 only to the date of filing of the notice of motion or order to show cause regarding permanent support, not to the date of filing of the original action. In *Mendoza*, the wife had filed a petition for dissolution requesting spousal support, but did not request temporary spousal support. (*Id.* at pp. 941–942.) The *Mendoza* court held that since there was no noticed motion or order to show cause concerning permanent spousal

25

support, there was no date to which the trial court could make the spousal support order retroactive under section 4333.  The *Mendoza* court noted that the Legislature could have provided for original support orders to be made retroactive to the filing date of the initial pleading, as it did expressly in the statute governing child support orders and as it did implicitly in the statute governing temporary support orders by not including any limitation.  (*Mendoza*, *supra*, 14 Cal.App.5th at p. 943.)  The *Mendoza* court also noted the ways that a petition for dissolution is functionally different from a notice of motion.  (*Ibid*.)

A response to a petition for dissolution is not equivalent to a notice of motion or an order to show cause concerning permanent spousal support.  It is clear that under current California law, the family law court could not order spousal support retroactive to the filing of the response requesting an award of spousal support.  The portion of the judgment awarding spousal support must be reversed.

On remand, the family law court is directed to enter a new spousal support order, to run from the date of the December 28, 2018 judgment.  At the time of rendering the December 28, 2018 judgment, the family law court may or may not have determined that the lump sum in retroactive support James would receive had a material effect on the amount of monthly support that was appropriate to order, and would be applied prospectively.  If on remand, in the discretion of the court, and based on the record at the time of the December 28, 2018 judgment, the amount of monthly

26

support awarded in the original order should remain the same, regardless of James not receiving the previously contemplated amount of retroactive support, the court may simply modify the spousal support order to accrue as of the date of its prior judgment.  If, however, in the discretion of the court, a different amount of monthly support is appropriate based on that record in the absence of James receiving the amount of retroactive support previously contemplated, then the court may enter a new monthly support order, to run from the time of the December 28, 2018 judgment.

## DISPOSITION

The portion of the judgment awarding spousal support is reversed and the matter is remanded for the trial court to enter a new order of monthly support that runs prospectively from the time of its prior judgment, and for the court to exercise its discretion to determine the amount of that monthly support based on the record at the time of its prior judgment.  In the interests of justice, the parties are to bear their own costs on appeal.


MOOR, J.

We concur:


RUBIN, P. J.


BAKER, J.